JOHN W. REMER, as Trustee in Bankruptcy of CORNER BROADWAY-MAIDEN LANE, INC., Respondent, *v.* 170 BROADWAY HOLDING CORPORATION and Another, Defendants, Impleaded with CITY BANK FARMERS TRUST COMPANY and Another, Appellants.

First Department, May 3, 1935.

*Edwin W. Cooney* of counsel [*Elmer J. Hoare* with him on the brief; *Mitchell, Taylor, Capron & Marsh,* attorneys], for the appellants.

*Howard C. Kelly,* for the respondent.

MERRELL, J. Plaintiff brought the present action, as trustee in bankruptcy of Corner Broadway-Maiden Lane, Inc., to recover from the defendant 170 Broadway Holding Corporation a balance of $1,104,500, alleged to be due the bankrupt upon the promissory note of said defendant. Plaintiff also asked judgment declaring null and void, as a fraud upon the bankrupt's creditors, and to cancel the same of record, a judgment of the Supreme Court rendered in favor of the defendant, appellant, City Bank Farmers Trust Company against Corner Broadway-Maiden Lane, Inc., and to declare null and void an order of the Supreme Court entered in proceedings supplementary to execution in said action, as well as the payment made pursuant to said order, and that the plaintiff recover of City Bank Farmers Trust Company the sum of $78,606.37 paid by or for Corner Broadway-Maiden Lane, Inc., to the city collector of the city of New York for taxes and water charges assessed against said premises at 170 Broadway, New York city, which were leased to said bankrupt, upon the ground that such payments constituted a voidable preference within the meaning of the National Bankruptcy Act. Plaintiff also sought to recover from the appellant City Bank Farmers Trust Company or 166 Broadway Corporation the unexpired value of certain insurance policies transferred to City Bank Farmers Trust Company allegedly owned by the bankrupt, and the total of certain operating expenses for said premises incurred after acquisition of title by 166 Broadway Corporation, and which expenses were paid by said bankrupt.

Several corporations are involved in this litigation:

*First.* Broadway-Maiden Lane Corporation owned the premises immediately preceding the acquisition thereof by the parties in litigation.

*Second.* 2–4 Maiden Lane Corporation, subsequently renamed 170 Broadway Holding Corporation, was formed for the purpose of

holding title to and giving a long term lease of said premises. Said 170 Broadway Holding Corporation defaulted in pleading herein. We will refer to the same as " fee corporation."

*Third.* Corner Broadway-Maiden Lane, Inc., was formed to become the tenant under the long term lease, but defaulted in pleading. Said last mentioned corporation is the bankrupt in behalf of which the respondent trustee brought the present action, and will be referred to hereinafter as the " bankrupt," and, also, as the " leasehold corporation." This corporation issued its " first mortgage leasehold bonds," which were disposed of to the public by a firm of brokers.

*Fourth.* The defendant 166 Broadway Corporation was formed at the instance of the defendant City Bank Farmers Trust Company, which held the first mortgage on the fee of said premises. 166 Broadway Corporation was formed under the provisions of chapter 623 of the Laws of 1932,* and took title from the referee in foreclosure of the fee mortgage. It is now an appellant herein.

On or about January 8, 1918, the Broadway-Maiden Lane Corporation, which then owned the premises at 170 Broadway, New York city, executed and delivered to New York Life Insurance Company its bond in the sum of $1,900,000, payable January 1, 1923. To secure the payment of this bond, the said Broadway-Maiden Lane Corporation simultaneously executed and delivered a mortgage covering the said premises. Said bond and mortgage, were, on January 10, 1923, duly assigned to the Farmers' Loan and Trust Company. At that time there was due of principal thereon the sum of $1,800,000. By an agreement dated January 8, 1923, payment of the principal indebtedness secured by the said bond and mortgage was extended to January 10, 1928, and by further agreement dated January 10, 1928, payment of said indebtedness, on which there was then due the principal sum of $1,700,000, was extended to January 10, 1933, the bond and mortgage being assumed by 2–4 Maiden Lane Corporation. On May 28, 1925, Broadway-Maiden Lane Corporation conveyed the mortgaged premises to 2–4 Maiden Lane Corporation. Said conveyance was subject to the above described mortgage held by The Farmers' Loan and Trust Company. The latter company was thereafter merged into the defendant, appellant, City Bank Farmers Trust Company. On said last mentioned date the grantee 2–4 Maiden Lane Corporation executed a lease of the mortgaged premises to Corner Broadway-Maiden Lane, Inc., for eighty-four years. Under the terms of the lease the lessee was to pay all taxes, assessments

---

* Amdg. Dec. Est. Law, § 111, and Pers. Prop. Law, § 21.— [REP.

and water charges assessed against the leased premises, in addition to the rent provided in the lease. On the same day the leasehold was mortgaged to secure payment of an issue of leasehold bonds in the principal sum of $1,300,000. Manufacturers Trust Company was named as trustee under the mortgage indenture. In the lease and in the leasehold mortgage it was expressly recited that the conveyances thereby effected were subject to the fee mortgage now held by the defendant, appellant. P. W. Chapman & Company, Inc., sold the leasehold bonds issued upon the security of said trust mortgage and purchasers thereof received same with due notice of the priority of the fee mortgage. The Chapman company paid to Corner Broadway-Maiden Lane, Inc., $1,202,337.50 as the net proceeds of sale of said bonds. As a part of the same transaction Corner Broadway-Maiden Lane, Inc., paid $1,215,147.85 to 2–4 Maiden Lane Corporation, of which $1,176,177.22 was evidenced by the latter's demand note. Substantially the entire amount so received by 2–4 Maiden Lane Corporation was employed by it to fulfill the contract to purchase the equity in the premises at 170 Broadway, New York, N. Y., and to pay the incidental expenses attending the closing. On January 10, 1933, 170 Broadway Holding Corporation made default in the payment of the semi-annual interest installment then due on the fee mortgage, and further failed to pay the principal indebtedness of $1,700,000, which also then fell due. It was expressly provided in the mortgage contract itself that in the event of any default, the rents and profits were thereby assigned to the mortgagee as additional security. Under the terms of the fee mortgage 170 Broadway Holding Corporation, on January 26, 1933, executed and delivered to City Bank Farmers Trust Company an agreement making it a mortgagee in possession. This agreement enabled the City Bank Farmers Trust Company to take over all rents from and also all leases and rental agreements affecting the mortgaged premises. City Bank Farmers Trust Company, on February 9, 1933, brought action to foreclose the equity in the mortgaged premises. Judgment of foreclosure was directed and a sale of the mortgaged premises was held on June 16, 1933. The premises were then bid in by the holder of the fee mortgage, City Bank Farmers Trust Company, for the amount of the mortgage debt, viz., $1,700,000. A deficiency judgment of $91,916.67 was subsequently entered against 170 Broadway Holding Corporation in favor of said mortgagee. On February 11, 1933, City Bank Farmers Trust Company brought action against the leasehold corporation to recover unpaid rent of $34,766.67, and unpaid additional rental, consisting of unpaid taxes of $40,200 which had become due on November 1, 1932, and unpaid past due water rates amounting to $730.90.

All of these items were obligations of Corner Broadway-Maiden Lane, Inc., the bankrupt, under the terms of its lease of the mortgaged premises. On March 6, 1933, judgment in favor of the City Bank Farmers Trust Company was entered against said bankrupt in the sum of $77,446.07. This judgment the learned referee held constituted a preferential payment in violation of the provisions of the National Bankruptcy Act, and declared the same to be null and void as a fraud upon the creditors of said bankrupt, and directed the same to be canceled of record, and judgment was subsequently entered to that effect. Following the obtaining of the judgment in favor of the defendant, appellant, against Corner Broadway-Maiden Lane, Inc., the latter was examined in supplementary proceedings, and thereafter, with the consent of the judgment debtor, an order of the Supreme Court was granted on March 31, 1933, and entered, whereby the balance of the judgment debtor in the Lawyers Trust Company, amounting to $10,744.11, was paid to the sheriff of New York county in partial satisfaction of the foregoing judgment. After deduction of the sheriff's poundage, the balance of said sum amounted to $10,461.67 and was paid to City Bank Farmers Trust Company. Of the sum so received by it, City Bank Farmers Trust Company, on June 12, 1933, paid the city collector of the city of New York the sum of $10,444.57 to discharge the unpaid balance of city taxes for the first half of the year 1933. With the consent and approval of the bankrupt, its agent, Charles F. Noyes Company, Inc., was authorized to apply the balance then standing to the credit of the bankrupt with said agent to discharge unpaid taxes assessed against the mortgaged premises and to apply future rents collected by the said agent for the same purpose. Pursuant to such arrangement, Charles F. Noyes Company, Inc., made payments aggregating a total sum of $67,862.26, which payments were made to the city collector of New York city. All of these moneys so paid represented rents and electric charges collected from subtenant occupants of the premises at 170 Broadway, New York, who were in possession pursuant to leases made with the bankrupt, and came from no other sources. All of said payments were made previous to adjudication of the Corner Broadway-Maiden Lane, Inc., as a bankrupt, but within four months preceding the filing of the petition in bankruptcy. The payments so made by Charles F. Noyes Company, Inc., were clearly payments out of rents collected by it. The record does not disclose just when said rents were collected. If any of the moneys used represented rents collected prior to the assignment, then said moneys belong to the bankrupt, but if the moneys so paid were from rentals received after the assignment of rents to the mortgagee, then said moneys belong to the mortgagee.

The issues herein were, on consent, referred to Hon. JAMES A. O'GORMAN, official referee, appointed to hear and determine the same. The learned referee held that the corporate entities of the fee corporation and the leasehold corporation could not be disregarded, and that plaintiff herein was entitled to judgment for the balance due on the promissory note of 170 Broadway Holding Corporation. It seems to us, in this respect, the learned referee was correct. The referee also held that City Bank Farmers Trust Company had knowledge of the insolvency of the bankrupt at the time the various payments were made to the city collector, and that the assignment of rents was subject to existing equities between the fee corporation and the leasehold corporation; that all payments and transfers complained of were preferential, and that, as to the bankrupt, fraudulent within subdivision (e) of section 67 of the National Bankruptcy Act;* that the payment of taxes by the lessee was requested and induced by City Bank Farmers Trust Company, and was for the benefit of its security as mortgagee; that the default judgment in favor of City Bank Farmers Trust Company should be canceled under the provisions of subdivision (f) of section 67 of the National Bankruptcy Act.* Judgment upon the report of the referee was entered on July 2, 1934, against the defendants City Bank Farmers Trust Company and 166 Broadway Corporation for a total sum of $87,566.55; against 170 Broadway Holding Corporation for the sum of $976,413.06; and declaring null and void the judgment obtained by City Bank Farmers Trust Company against Corner Broadway-Maiden Lane, Inc., for $77,446.07, and directing that the same be set aside, canceled and discharged of record.

It seems to us that even if there was a defense for rent as between the fee and the leasehold corporations, such defense was not available against the mortgagee after the pledge of rents contained in the mortgage had been established. In the deed to the fee corporation, the lease to the bankrupt and the leasehold mortgage indenture to Manufacturers Trust Company, all duly recorded, it was specifically recited that such conveyances were made subject to the fee mortgage, dated seven years before. The leasehold bondholders had due and sufficient notice of the provisions of the leasehold mortgage. There was not only constructive, but actual, notice of the provisions of the fee mortgage with reference to rents. This entitled the holder on foreclosure to the appointment of a receiver of the rents without regard to the adequacy of the security. The fee mortgage further provided: " In the event of any default or defaults in paying said principal or interest, such rents and profits

---

* U. S. Code, tit. 11, § 107.— [REP.

are hereby assigned to the holder of this mortgage as further security for the payment of said indebtedness." Like provisions for receivership and assignment of rents in the event of default were contained in the extension agreement made January 10, 1928, entered into by the fee corporation. Such provisions in the original mortgage and in the extension agreement were in effect a pledge of the rents and profits of the mortgaged premises as further security for the payment of the principal and interest due on the fee mortgage. (*Sullivan* v. *Rosson*, 223 N. Y. 217; *Monica Realty Corp.* v. *122 Fifth Avenue Corp.*, 264 id. 52.) Default under the fee mortgage occurred when the second half of the 1932 city taxes, which became due November 1, 1932, were not paid. A further default occurred on January 10, 1933, when the principal and interest upon the fee bond and mortgage became due and were not paid. Furthermore, on January 26, 1933, the fee corporation, pursuant to the terms of the original mortgage and the 1928 extension agreement, executed and delivered to the City Bank Farmers Trust Company an agreement making it a mortgagee in possession and authorizing it to take over all rents from and also the leases and rental agreements affecting the mortgaged premises. Thereby the fee mortgagee confirmed the pledge of rents contained in the mortgage and extension agreement. (*Sullivan* v. *Rosson*, 223 N. Y. 217; *Womans Hospital* v. *Sixty-seventh Street Realty Co.*, 265 id. 226, 235.) On January 26, 1933, when the agreement making the respondent City Bank Farmers Trust Company a mortgagee in possession was executed, there was due from the bankrupt unpaid rent of $34,766.67. This rental had become due on November 1, 1932. There was unpaid additional rent in the form of the second half of the 1932 city taxes, which fell due November 1, 1932, amounting to $40,200, exclusive of interest, and there was an unpaid water charge of $730.90. The total arrearage was $75,697.57. It seems to us that had a receiver been appointed of such rents, he would have obtained no greater title thereto than a mortgagee under a pledge contained in a mortgage and confirmed by a further agreement awarding the mortgagee possession of the premises. The result in each case would be to make the plaintiff-mortgagee a receiver of rents with the same powers which would have been possessed by a receiver appointed by the court. (*Metropolitan Life Ins. Co.* v. *Childs Co.*, 230 N. Y. 285, 288.)

" In principle there can be no distinction between rents collected by a receiver and rents collected under an assignment where the purposes for which the rent may be applied are the same." (*Womans Hospital* v. *Sixty-seventh Street Realty Co.*, 265 N. Y. 226, 235.)

In *Lofsky* v. *Maujer* (3 Sandf. Ch. 69) the court said (at p. 72): "The result of the law on the subject is, that a mortgagee whose debt is all due and is defectively secured, by filing his bill to foreclose his mortgage and procuring a receiver, obtains an equitable lien on the unpaid rents of the lands mortgaged.

"In this case the rent was still due by virtue of the lease; it of right belonged to the mortgagee, and his bill having intercepted it, the amount collected pending the suit must be paid to the complainant."

In *Hollenbeck* v. *Donnell* (94 N. Y. 342, at p. 347) the same doctrine was enunciated by the Court of Appeals in the following language: "The legal right to the rents, as well as to the possession, continues in the mortgagor until foreclosure and sale, as it does in a vendor until conveyance. But when default has been made in the condition of the mortgage, the mortgagee at once becomes entitled to a foreclosure of the mortgage and a sale of the mortgaged premises. This process requires time, and on general principles of equity, the court may make the decree, when obtained, relate back to the time of the commencement of the action, and where necessary for the security of the mortgage debt, may appoint a receiver of the rents and profits accruing in the meantime, thus anticipating the decree and sale. (*Bank of Ogdensburgh* v. *Arnold*, 5 Paige, 40.) There can be no doubt that in a proper case where a bill was filed for the specific performance of a contract to convey land, the court might appoint a receiver of the rents accruing during the pendency of the action, for equity treats that as done which ought to be done, and, therefore, considers a conveyance as made at the time when it ought to have been made, and the rents as belonging in equity, to the vendee from the time when he became entitled to the conveyance. On the same principle it may deem the foreclosure of a mortgage completed as of the time when the mortgagee becomes entitled to it."

We are, therefore, of the opinion that, as representing rentals due upon the property, the default judgment obtained by plaintiff did not constitute a preferential payment. So far as rentals which were collected from subtenants by the leasehold corporation, we think they were impressed with a trust for the amount of charges due under the main lease. Surely, the creditors of the leasehold corporation, in case of insolvency, have no claim to the rents and profits of the leasehold ahead of the prior claim of the mortgagee for such rent.

It is conceded by respondent that through the appointment of a receiver the City Bank Farmers Trust Company could have established its lien to the rents from subtenants. As before stated, we are of the opinion that the appointment of a receiver would have

invested the defendant, appellant, with no greater rights to the rentals than it received through the assignment of the rents and by being placed in possession of the mortgaged premises. The fee mortgage contained a clause assigning the rents and profits to the mortgagee in the event of default. In *Womans Hospital* v. *Sixty-seventh Street Realty Co.* (*supra*) the Court of Appeals said: " Though the rents were pledged as security under the terms of the first mortgages, title to such rents, as they became due and were collected, remained in the owner of record until the pledge was made effective, and the owner of the equity divested of title to the rents by appointment of a receiver or by assignment. Even where a receiver of rents is appointed, or an assignment of rents procured, as additional security under a first mortgage, the holder of a subordinate lien upon the mortgaged premises does not thereby obtain any interest in such rents. The subordinate lien does not attach to the rents of the mortgaged property under such circumstances."

By the assignment of the rents of January 26, 1933, the defendant, appellant, became a mortgagee in possession. Thereafter no offset or prepaid rent or other arrangement could defeat the mortgagee's right to collect the rent. Before it could be said that the payments made by the bankrupt were preferential, it is necessary to determine what part thereof were rents actually received subsequent to the date of the assignment of the rents to the mortgagee. If any part of the moneys paid were in the possession of the tenant prior to the assignment of rents, such assignment could not operate as to such moneys. In *Hayes* v. *Dickinson* (9 Hun, 277) a controversy arose between a mortgagee in whose behalf a receiver of rents had been appointed and the mortgagor's assignee in bankruptcy. A question was involved as to the disposition of the rents collected and which had been awarded to the assignee in bankruptcy by the trial court. In reversing the judgment of the trial court and awarding the rents to the mortgagee, the General Term in this Department pointed out that an equity intervened for the appointment of the receiver, and that " the trustee or assignee in bankruptcy takes the property subject to all legal and equitable claim of others. It is affected by the equities which can be urged against it, not tainted by fraud."

Under the terms of the original mortgage, rents due at the time of the default and thereafter to become due were payable to the mortgagee in its own right by virtue of the terms of the original mortgage. The receipt thereof, we do not think, constituted a preferential payment in violation of the provisions of the National Bankruptcy Act.

We are, therefore, of the opinion that the judgment appealed from, in so far as it orders, adjudges and decrees that the default

judgment obtained by the appellant City Bank Farmers Trust Company against the bankrupt for $77,446.07 be declared null and void and canceled and discharged of record, should be reversed. We are, further, of the opinion that the provision of the judgment that the plaintiff-respondent, as trustee in bankruptcy, recover of the defendants City Bank Farmers Trust Company and 166 Broadway Corporation the sum of $87,566.55, including interest and costs, should be modified. The mortgagee herein was entitled to all rents subsequent to the assignment thereof on January 16, 1933. The payments made by Charles F. Noyes Company, Inc., were payments made out of rents collected by it. The record does not show when such rents were collected. If any of the moneys used represented rents collected prior to the assignment, such moneys would belong to the bankrupt. If made subsequently to the assignment of rents, then the moneys properly belonged to the defendant, appellant.

We think that the judgment in this respect should be modified, and that an accounting be had by Charles F. Noyes Company, Inc., which will disclose the dates when the sums used from rents paid were collected. Otherwise, the judgment appealed from should be affirmed. Costs are allowed to the defendants, appellants, against the plaintiff, respondent.

MARTIN, P. J., McAVOY, O'MALLEY and UNTERMYER, JJ., concur.

Judgment modified as indicated in opinion and as so modified affirmed, with costs to the appellants. Settle order on notice reversing findings inconsistent with this determination, and containing such new findings of fact proved upon the trial as are necessary to sustain the judgment hereby awarded.