## 1180 ANDERSON AVENUE REALTY CORP., Appellant, v MINA EQUITIES CORP. et al., Respondents.

First Department, July 28, 1983

### APPEARANCES OF COUNSEL

*Sidney Rabekoff* of counsel (*Paul L. Beck,* attorney), for appellant.

*Jonathan S. Hacker* of counsel (*Rosen, Hacker & Nierenberg,* attorneys), for respondents.

### OPINION OF THE COURT

ASCH, J.

Plaintiff is the owner of 1180 Anderson Avenue, Bronx, which is an income producing multiple dwelling. Defendant Mina Equities Corp. (Mina) is the holder of a consolidated mortgage under assignment of mortgage from Eastern Savings Bank dated April 26, 1982.

As is pertinent herein, that mortgage contains an "assignment of rent" clause which provides as follows: "19. That after any default hereunder, the then owner of the mortgaged premises shall, *on demand, surrender possession of the premises to the holder of said mortgage and hereby consents that, at any time after such demand, the holder of said mortgage may enter upon said premises and*

*let same and collect all rents therefrom which are due or to become due and apply the same, after payment of all charges and expenses, on account of any portion of the mortgage debt selected by such holder,* whether then matured or not; and said rents and all leases existing at the time of such default are, in the event of such default, hereby assigned to the holder of said mortgage as further security for the payment of said indebtedness. In the event of such default, the holder of said mortgage, by virtue of such right to possession, or as the agent of the then owner of the mortgaged premises, may dispossess, by the usual summary proceedings, any tenant then or thereafter in default in the payment of any rent, and the party of the first part hereby irrevocably points the holder of said mortgage agent for such purpose. In the event that the then owner of the mortgaged premises is an occupant of said premises, such occupant agrees to surrender possession of the premises to the holder of said mortgage immediately upon any default hereunder, and, if such occupant remains in possession the possession shall be as tenant of the holder of said mortgage, and such occupant agrees to pay monthly in advance to the holder of said mortgage such rent for the premises so occupied as the holder of said mortgage may demand, and in default of so doing, such occupant may also be dispossessed by the usual summary proceedings. These covenants shall become effective immediately after the happening of any such default solely on the determination of the then holder of said mortgage, who shall give notice of such determination to the then owner of the mortgaged premises. In case of foreclosure and the appointment of a receiver of rents, the covenants herein contained shall enure to the benefit of such receiver." (Emphasis added.)

Under a separate and distinct "Assignment of Rent Agreement," dated May 28, 1974, plaintiff's predecessor in title had assigned the rent, as additional security for payment under the mortgage, to Eastern Savings Bank, the operative language of the assignment being as follows: "This assignment of rent shall become effective at the option of the mortgagee *upon any default under the terms of the aforesaid mortgage documents."* (Emphasis added.)

This assignment of rent agreement was in turn reassigned by Eastern Savings Bank to Mina by separate agreement dated April 26, 1982.

When plaintiff had defaulted under the mortgage for failure to pay several monthly mortgage payment installments of principal and interest, as well as real estate tax and water/sewer charges (in October, 1981 through June, 1982), Mina commenced a separate foreclosure action in June, 1982 seeking a judgment of foreclosure, appointment of a receiver, etc. To date, no receiver has been appointed nor has judgment been rendered in that action, although plaintiff is purportedly in default under that action. Nor is there anything in the record, other than the mere allegation contained in the foreclosure complaint that Mina had, after plaintiff's alleged default, demanded possession of the premises as a prerequisite for the collection of rents pursuant to its mortgage rights under paragraph 19 of the mortgage.

Nonetheless, as alleged in the complaint, on or about April 28, 1982 (preceding the institution of the foreclosure action) Mina entered upon the premises and posted a notice to the tenants, stating that defendant Rej Management Corp. (Rej) was appointed managing agent, and demand was made for the payment of rent to Mina, and that Mina had been collecting those rents for April, May, June, and July, 1982, when the instant action was instituted. It was also alleged that defendants have refused, despite demand, to turn over those rentals to plaintiff, and that the actions of defendant were unlawful and constituted actionable fraud and trespass. Plaintiff sought both compensatory and punitive damages.

Defendants' answer contained only general denials of the substantive allegations in the complaint, in effect denying that defendants had ever made entry on the premises or demanded rent from the tenants.

However, in moving for summary judgment, defendant cited the "assignment of rents" as contained in the separate agreement, as supporting its right to enter the premises and collect the rents (upon plaintiff's mortgage default) which they *admit* having done since April, 1982.

The court below, in granting defendants' motion for summary judgment dismissing the complaint, noted that plaintiff does not deny that it defaulted in making payments under the mortgage. It therefore reasoned that under the terms of the (separate) assignment of rents agreement, upon plaintiff's default the defendants had the option, *without doing more,* of collecting those rentals, notwithstanding that it was without plaintiff's consent or without an actual *demand* for possession. Accordingly, it held that the complaint failed to state a cause of action. This was error.

The law in New York with respect to assignment of rent clauses is best understood by an analysis of why such provisions have been incorporated in mortgage instruments. At early common law a mortgage was regarded as a legal conveyance of the fee to the mortgagee. If the mortgagor paid the mortgagee the specified sum at a specific time and place, the mortgagor's title would be restored. Thus, the moment the mortgage was executed, the mortgagee was entitled to possession (see Holmes, Common Law, p 389). The right to rent flowed from the right to possession. Rent was deemed a beneficial incident attendant upon title. Therefore, once the mortgagee took possession, he was considered to have the beneficial interest in the land and the right to rents (45 Harv L Rev 901).

Early in the 19th century the courts of New York came to recognize that a more accurate appraisal of the mortgagor-mortgagee relationship was that of debtor-creditor. Hence, it was unfair to permit the mortgagee to take possession summarily of the debtor's property without the mortgagor's consent or requiring the mortgagee first to assert his rights under his interest. In 1830, by legislative action the mortgagee was denied the right to possession of the mortgaged premises until foreclosure and sale. He had no claim to rents and profits for as long as the mortgagor remained in possession. This provision long persisted as the law of New York (see Abelow, An Historical Analysis of Assignments of Rent in New York, 6 Brooklyn L Rev 25).

A practice developed of inserting in mortgage instruments a clause permitting the appointment of a receiver, and a provision assigning or pledging rents in the event of

default, at times coupled with language affording a right of entry upon the premises. "The parties may insert in a mortgage any conditions mutually agreeable and, if they are neither oppressive nor unconscionable, they will be enforced." (*Graf v Hope Bldg. Corp.*, 254 NY 1.)

In cases where the mortgagee has attempted to take possession or in some manner to obtain the rents without foreclosing, the courts of New York "after some fluctuation" have held that "a clause in a mortgage assigning rents to the mortgagee in the event of default operates merely as a pledge of rents and does not entitle the mortgagee to them until he or a receiver in his behalf takes possession or until he attempts in some fashion to assert his right to the rents" (*Matter of Berdick,* 56 F2d 288, 289; see, also, *Sullivan v Rosson,* 223 NY 217, 224-225).

In States, including New York, where the mortgagee has a lien, rather than title, the mortgagor generally has the right to possession both before and after default until foreclosure and the expiration of the period of redemption from foreclosure. New York has reconciled the doctrine of "mortgagee in possession" with the lien concept of a mortgage "upon the basis of consent, express or implied in fact, on the part of the mortgagor that the mortgagee be in possession of the mortgaged premises. Further, the consent in New York must be to an entry by the mortgagee 'under or by virtue of the mortgage,' or, at least, 'for purposes, or under circumstances not inconsistent with their relative legal rights under the mortgage'" (4 American Law of Property, § 16.94, "Mortgagee-In-Possession" Rule, pp 175, 177).

It has been said that a mortgagee wishing to obtain rents must actually possess himself of them or the right to them through an arrangement with the mortgagor (*Remer v 170 Broadway Holding Corp.,* 244 App Div 322). The mortgagee under an "assignment of rents" clause may not without the consent of the mortgagor enter into possession and collect the rents and if he does so, his entry and collection of rents are illegal (*Dime Sav. Bank of Brooklyn v Altman,* 246 App Div 823).

Where the mortgage itself, as in the instant case, gives the mortgagee the right upon default to enter upon and

take possession of the mortgaged premises, and receive the rents and profits, "the assignment becomes absolute upon the mortgagee making formal demand for and being refused possession. Under such a clause, lawful entry *or* demand for possession is a condition precedent to a right to the rents" (38 NY Jur, Mortgages and Deeds of Trust, § 128, pp 242, 247; emphasis added).

Paragraph 19 of the mortgage herein, quoted at length *supra, expressly* provides that the mortgagor shall surrender possession *on demand* and that the mortgagee may enter *after demand.*

The separate assignment of rents in this case also expressly provides that upon default it will become effective "under the terms of the aforesaid mortgage documents". Thus, the defendants were bound by the provision for a prior demand for possession provided for in the mortgage document.

Although it appears that the law in New York may permit the parties to agree to entry and possession by the mortgagee immediately upon default, without demand (see *148 St. Realty Co. v Conrad,* 125 Misc 142), "the court will enforce a clause in a mortgage which is clearly expressed and has been clearly followed by the mortgagee who attempts to secure rents" (6 Brooklyn L Rev 25, 51).

Defendants have provided no evidentiary basis to establish that demand, as required by the mortgage and the separate assignment of rents agreement which incorporated the terms of the mortgage, was made to render their entry legal. Their bare denials, unsupported by any evidence to contradict the allegation that they resorted to self-help without contractual or legal justification in collecting rents upon fraudulent notices sent to the tenants, are not sufficient to defeat plaintiff's motion for summary judgment.

Since the default by plaintiff is undisputed, however, damages "must be predicated on elements other than the collection of such rents and their application to the reduction of the indebtedness" (*Dime Sav. Bank of Brooklyn v Altman, supra,* at p 823). The damages to be ascertained will depend upon any force, and other facts that might

show aggravated injury or waste to the premises (see *Dime Sav. Bank of Brooklyn v Altman,* 275 NY 62, 71-72). Such a determination cannot be made on the record before the court at this time.

Accordingly, the order of the Supreme Court, Bronx County (MERCORELLA, J.), entered February 7, 1983, granting defendants' motion for summary judgment dismissing the complaint and denying plaintiff's cross motion for summary judgment, should be reversed on the law, without costs, and plaintiff's cross motion for summary judgment granted as to liability only, and an assessment of damages directed.

KUPFERMAN, J. P. (dissenting). The majority, by its interpretation of a claimed but outmoded practice, would make the plaintiff, who has been in substantial default, into a party aggrieved, and make the defendant, who was deprived of its bargain, into a malefactor liable in damages.

Further, under the majority interpretation, there would be little point to a provision in section 294-a of the Real Property Law, "Recording assignments of rent": "2. Every such assignment not so recorded shall be void as against any person who subsequently purchases or acquires by exchange, or contracts to purchase or acquire by exchange, the same real property, or any portion thereof, *or acquires by assignment the rent to accrue therefrom* as provided in this section, in good faith and for a valuable consideration, from the same vendor or assignor, his distributees or devisees, and whose conveyance, contract or assignment is first duly recorded." (Italics added.)

How could a prior recording rent assignee have a priority on rent collection despite a subsequent recording mortgagee with a rent assignment, if the requirement is first for foreclosure or for appointment of a receiver or for a demand?

The defendant was not acting wrongfully when it collected the rents, and, consequently, there was no trespass.

SANDLER, ROSS and ALEXANDER, JJ., concur with ASCH, J.; KUPFERMAN, J. P., dissents in an opinion.

Order, Supreme Court, Bronx County, entered on February 7, 1983, reversed, on the law, without costs and without disbursements, and plaintiff's cross motion for summary judgment granted as to liability only, and an assessment of damages directed.