**FEDERAL HOME LOAN MORTGAGE CORPORATION, Plaintiff,**

v.

**DUTCH LANE ASSOCIATES, Morton L. Ginsberg, MLG Properties, Inc., Patrick McArdle, d/b/a A & P Maintenance, Village of Spring Valley, People of the State of New York, and John Doe No. 1 to 77, Defendants.**

**The names of the John Doe defendants being fictitious and unknown to Plaintiff, the persons and entities intended being parties having an interest in or lien against the premises sought to be foreclosed herein, as owner, tenant, or otherwise.**

No. 90 Civ. 7623 (GLG).

United States District Court,
S.D. New York.

Oct. 16, 1991.

---

**134**

Cooper, Liebowitz, Royster & Wright, Elmsford, Thomas B. Decea, of counsel, for plaintiff.

Harvis Trien & Beck, New York City, Robert Trien, of counsel, for defendants.

## OPINION

GOETTEL, District Judge.

Plaintiff Federal Home Loan Mortgage Corporation has commenced this action against Dutch Lane Associates, *et al* for foreclosure on a mortgage, sale of the mortgaged property, and collection of rents past due and as yet unreceived from defendants.

### I. FACTUAL BACKGROUND

In May 1985, defendant Dutch Lane Associates ("Dutch Lane") executed a Consolidated Mortgage and a Consolidated Note with Raritan Valley Savings and Loan Association ("Raritan"), the assignee and/or mortgagee of three prior mortgages and their respective notes relating to a 77–unit apartment building. By its terms, Dutch Lane agreed to pay Raritan $875,000 with interest in monthly installments. Dutch Lane also assigned to Raritan all rents, issues, and profits from the mortgaged property. On May 17, 1985, Raritan assigned to the Federal Home Loan Mortgage Corporation ("FHLMC") all rights under the consolidated agreement and assignment of rents.

According to the FHLMC in its complaint, beginning in April 1990, Dutch Lane failed to make its monthly payments. Dutch Lane, while not specifically responding to this allegation in its answer, admits that some of its monthly installments were not made timely. On October 8, 1990, the FHLMC notified the defendants by certified mail at their offices that the Consolidated Agreement was in default and the FHLMC was exercising its rights to all rents and revenues generated by the property. It demanded payment in full of the entire debt by October 18th. On October 19, 1990, FHLMC sent a second letter by certified mail to defendants at same addresses notifying them that it had accelerated the entire unpaid balance of the Consolidated Note and a foreclosure action would be commenced if payment in full was not received. It also demanded all rents collected in October and November of 1990.

On November 28, 1990, FHLMC commenced a foreclosure action against the defendants. On January 21, 1991, after securing an extension of time from the court, the defendants filed an answer. A pre-trial conference was held in May 1991 at which defendants appeared through their attorney and requested more time to make a settlement offer. The court granted the request and set a second conference for June. Although counsel for FHLMC travelled from Washington, D.C. to appear for the conference before the district court judge, counsel for the defendants failed to appear. The pre-trial conference was later held by telephone. Despite repeated settlement proposals, the parties failed to reach any agreement. Plaintiff contends that defendants inability to make any good faith payment on the mortgage led to the failed negotiations. A motion schedule was set for the case.

## II. DISCUSSION

Before the court today are plaintiff's motion requesting summary judgment on its foreclosure action and rejecting defendants' affirmative defenses, a default judgment against several of the defendants, and dismissal of the complaint against the John Doe defendants. Also here today is defendants' cross motion to dismiss the complaint.

### A. Default Judgement

We first dispose of the plaintiff's default judgment against defendants' Patrick McArdle d/b/a A & P Maintenance ("McArdle"), Village of Spring Valley and the People of the State of New York. As the affidavits of service show, process was served on McArdle on April 10, 1991. No answer was received within the 20 days allowed by Rule 12 and no appearance or pleading has been offered. Defendants Village of Spring Valley and People of the State of New York filed a notice of appearance and waived their right to interpose an answer. Consequently, under Rule 55 of the Federal Rules of Civil Procedure, Plaintiff's default judgment is granted against these defendants.

### B. Motion for Summary Judgment

Turning to plaintiff's summary judgment motion for foreclosure and sale of the Property, defendants in their answer raised three affirmative defenses. First, defendants contend that the court lacks personal jurisdiction over the defendants. Second, they argue that Dutch Lane has tendered payment of arrears which plaintiff has refused to accept. Finally, defendants claim that plaintiff is not entitled to any equitable relief.

The standard for summary judgment is well-established. Under Rule 56 of the Federal Rules of Civil Procedure summary judgment is only proper where "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party, FHLMC in this case, bears the initial burden of demonstrating to the court that no genuine issues of material fact exist. If the moving party meets this burden, the opposing party must "set forth specific facts showing that there is a genuine need for trial." Fed.R.Civ.P. 56(e). Creating some abstract doubt as to material issues is not enough; the standard

calls for specific facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). The court's role in this process is limited. We must answer one question: are there any genuine factual issues that are disputed and therefore must be resolved by the trier of fact? If so, the court may not grant summary judgment. "If reasonable minds could not differ as to the import of the evidence, however," summary judgment is proper. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–51, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986).

### 1. Sufficiency of Service of Process

At the outset, the court notes that defendants have not opposed plaintiff's actual request for a judgment of foreclosure and sale of the mortgaged property. In fact, defendants offer evidence from appraisals that sale of the Property would fully cover their debts to plaintiff. Instead, defendants assert an affirmative defense of improper service of process. This issue, central to both plaintiff's summary judgment motion on foreclosure and defendant's cross motion to dismiss, is sharply contested by the parties. In their answer, defendants' third affirmative defense states that the court lacked personal jurisdiction over the defendants. The details of this claim, however, were not specified in the answer.

Plaintiff contends that process was properly served on defendants as evidenced by the affidavits of service filed with the court. Apparently, the superintendent of the office building in question was served. Defendants claim, however, that he was not authorized to accept process. Plaintiff also notes that defendants clearly received actual notice of the action and were not prejudiced by any alleged defects in process since they filed a timely answer, participated in two schedule pre-trial conferences, and carried on extensive settlement negotiations over a period of seven months. Additionally, plaintiff argues that defendants waived their claim of insufficient of service of process by failing to raise it specifically at any time during the events occurring before this set of motions was filed. Plaintiff also argues that the issue of improper service of process is moot now that both Dutch Lane and MLG have been properly served through the Secretary of State. *See* Decea Affidavit. Although this service occurred outside the 120 day period since the complaint was filed, plaintiff urges the court to find good cause for the late service. Defendants contend that raising a lack of personal jurisdiction defense in their answer protected their right to object to service of process and in fact, as affidavits demonstrate, process was not served on the proper recipients to satisfy the requirements of Rule 4 of the Federal Rules of Civil Procedure.[1] Defendants stress that the pre-trial conference was brief and only dealt with settlement matters. They also argue that plaintiff suffered no prejudice by now raising this defense on cross motion.

■ To begin, we note that lack of personal jurisdiction is not a defense of right but rather a privileged defense that can be waived "by failure to assert it seasonably, by formal submission in a cause, or by submission through conduct." *Neirbo Co. v. Bethlehem Corp.,* 308 U.S. 165, 168, 60 S.Ct. 153, 154, 84 L.Ed. 167 (1939). The defense of improper service of process, although no specific time limit is set for its raising by Rule 12(h)(1), must be raised in a reasonably timely fashion or it is waived. *See Burton v. Northern Dutchess Hosp.,* 106 F.R.D. 477, 481 (S.D.N.Y.1985).

Rule 12(b) of the Federal Rules of Civil Procedure clearly states that a defense of insufficiency of process, if made by motion as opposed to in a pleading, "shall be made before pleading if a further pleading is permitted." Since defendants did file a

---

1. Specifically, defendants contend that service was improper under Rule 4(d)(3) which requires service "[u]pon a domestic or foreign corparation or upon a partnership ... by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process." The recipients of process, defendants argue, were not agents of Dutch Lane or MLG authorized to accept process.

responsive pleading, *i.e.* their answer to plaintiff's complaint after being granted an extension by the court, if this defense was to be raised in a motion, defendants were required to raise it in a pre-answer motion. According to Rule 12(h)(1), failure to do so before the answer, whether by individual motion or a consolidated motion under Rule 12(g), waives the improper service of process defense. Here, no pre-answer motions, consolidated or otherwise, were made by defendants. Therefore, this court will be compelled to hold the improper service defense waived in this case unless we find that defendants successfully raised it in their answer.

In their answer, defendants' third affirmative defense stated, "This Court does not have personal jurisdiction over defendants Dutch, MLG, and Ginsberg." The crucial question is whether this language sufficiently incorporates an insufficiency of service of process defense to preserve it for specification in later motions. Defendant argues that since the court cannot have personal jurisdiction over a party if process was improperly served, a defense of lack of personal jurisdiction may, by definition, include an improper service defense.

■ To resolve this issue, we first turn to the specific language of Fed.R.Civ.P. Rule 12(b). In specifying which defenses may be raised in pre-answer motions, it separately lists (2) lack of jurisdiction over the person and (5) insufficiency of service of process. There is no implication that the fifth defense listed, improper service of process, is subsumed within the second defense listed, lack of personal jurisdiction. Although Rule 12 clearly envisions in subsections (b) and (g) the joining of one or more of these defenses in a single motion or pleading, it does not imply that any one of the listed defenses may be raised or preserved by raising one of the other listed defenses. Consequently, we conclude that the raising of a "lack of personal jurisdiction" defense does not, under Rule 12, concurrently raise or preserve an insufficiency of service of process defense. If the Federal Rules of Civil Procedure manage to clearly and separately identify an "insuffi-

ciency of service of process" defense from a "lack of jurisdiction over the person" defense, it places no meaningful burden on defendants to require them to do the same. Allowing parties to actively engage the judicial process yet delay in raising issues of technical defects in the proper form of service of process that could have been easily cured early on makes little sense and merely wastes precious judicial time and resources.

Our conclusion tracks the reasoning from cases in other circuits. In *Roque v. United States*, 857 F.2d 20 (1st Cir.1988), the court found that the government's answer, by raising a "lack of personal jurisdiction" defense, did not clearly allege insufficient service of process. While the court, in finding "good cause" to excuse any defect, noted considerations inapplicable here, it also stressed factors we find present in this case such as the simple manner in which this defect could have been cured, the lack of any demonstrable prejudice to the party claiming the improper service, and the failure to clearly allege insufficiency of service. Significantly, the court in *Roque* stated:

> If the true objection is insufficient service of process, we do not think it is too much to require a litigant to plainly say so. The government should not couch its true objections to the sufficiency of service in the garb of formalistic incantations of lack of personal jurisdiction ... Hence, if the government were a private litigant, we would most likely conclude that the defense of insufficient service of process had been waived.

*Id.* at 22. While this language was not the foundational holding of the court, its reasoning is both applicable and persuasive. Moreover, it is clear in this case that these defendants are amenable to suit in New York given their status as New York corporations and residents as well as the location of the mortgaged property in New York. Like other courts, this court might be more reluctant to find a waiver if other jurisdictional issues such as amenability to suit in the chosen forum were present. *See Datskow v. Teledyne, Inc.*, 899 F.2d 1298, 1303 (2nd Cir.1990), *cert. denied*, — U.S.

——, 111 S.Ct. 149, 112 L.Ed.2d 116 (1990). Here, defendants have only challenged the form of service of process. However, this defect was easily curable if defendants had specified their objection at any time prior to this motion.

In their briefs, defendants cite to cases in this district that reach a contrary result. For example, in *Aries Ventures Ltd. v. Axa Finance, S.A.*, 729 F.Supp. 289, 303 (S.D.N.Y.1990) (citing *Fish v. Bamby Bakers, Inc.*, 76 F.R.D. 511 (N.D.N.Y.1977)), the district court held that by stating an affirmative defense of lack of personal jurisdiction in their answer defendants protected their objection to service of process. The district court, however, refused to dismiss the case for improper service of process. After identifying the court's broad discretion to dismiss or retain the case, it quashed the service made on the defendants.[2] The court emphasized that the defendants had clearly received actual notice of the action and had defended the case for three years.

In this case, even if we were to hold that defendants had successfully raised their service of process defense, we would reach the same practical result. Our discretionary authority would be best exercised to retain the case here as well. First, it is clear that both Dutch Lane and MLG had actual notice of the proceedings. Defendants petitioned the court in a timely manner for an extension to file their answer. They interposed an answer without suffering any prejudice from alleged defects in the service of process and then proceeded to enter into seven months of settlement negotiations. Despite participation in two pre-trial conferences, defen-

dants waited to specify their improper service of process objection until after the 120 day limit for proper service had passed. Under these circumstances, we conclude that quashing service and retaining the case would be the best course if defendants defense had not, as we held above, been waived.[3]

We further note that the service of process occurring in this case did not clearly run afoul of Fed.R.Civ.P. Rule 4's requirements. Plaintiff served process by hand to the defendants at their places of business using the very same addresses to which it had previously mailed the October 8 default letter that Defendants admitted receiving. There is no dispute that service was made at a proper location. Plaintiff makes reference to the service of process affidavits filed with the court to support its claim that process was properly served. There is also no dispute that defendants received actual notice of these proceedings. Instead, defendants simply argue that the people identified in the affidavits of service as the recipients of process were misidentified or lacked authority to accept process. Whether the people handed process were in fact proper recipients is a factual issue we need not decide. Given that defendants received actual notice of the proceedings, the absence of any other jurisdictional issues, and the proper service through the Secretary of State albeit after the 120 day period had passed, the court would find "good cause" under Rule 4(j) of the Federal Rules of Civil Procedure to excuse the purported defect. Therefore, defendants' cross-motion to dismiss for insufficient service is denied.

---

**2.** As the *Aries* court noted, dismissal is not mandatory when service of process is improper. "Motions under ... Rule 12(b)(5) differ from the other motions permitted by Rule 12(b) somewhat in that they offer the court a course of action other than simply dismissing the case when defendant's defense or objections is sustained." *Aries*, 729 F.Supp. at 303 (quoting 5 Wright and Miller, *Federal Practice and Procedure* Sec. 1354, at 584 (1969)).

**3.** Other cases cited by defendants, in finding a waiver of the service of process defense, stress the length of time in which parties had partici-

pated in the judicial proceedings. *See, e.g., Burton v. Northern Dutchess Hosp.*, 106 F.R.D. 477 (S.D.N.Y.1985); *Benveniste v. Eiseman*, 119 F.R.D. 628 (S.D.N.Y.1988). While the time that has elapsed in this case between the filing of the complaint and the raising of the defense, some ten months, was not as extended, our conclusion that defendants waived their improper service of process defense does not rest on the time factor alone. Defendants' actual notice, plaintiff's re-service of process through the Secretary of State, and the absence of any other jurisdictional issues bolster the our position.

## 2. Tender of Payment of Arrears

The court next examines a second affirmative defense raised by defendants to plaintiff's motion for summary judgment, the tender of payment of arrears. Plaintiff states that despite settlement conferences and negotiations, defendants never tendered any payments of arrears. Defendants offer evidence from an appraisal that the sale of the property in question should result in revenues sufficient to cover all of their debts to FHLMC. They also offered evidence in affidavits that Dutch Lane has twice been offered $1.5 million for the property. This evidence, however, avoids the central question to the defense: did defendants ever tender any actual payments?

■ Under New York law, however, the answer to this question is immaterial. If a proper acceleration has taken place (and Defendants offer no evidence to the contrary), the mortgage can no longer be redeemed by tendering the defaulted installments plus interest. *See, National Bank of North America v. Cohen,* 89 A.D.2d 725, 453 N.Y.S.2d 849, 850 (3rd Dep't 1982); *Albertina Realty Co. v. Rosbro Realty Corp.,* 258 N.Y. 472, 180 N.E. 176 (1932). Plaintiff was under no obligation to accept any tender of payment from Defendants after acceleration occurred.

## 3. Assignment of Rents

■ The final affirmative defense raised by defendants with which we must contend is plaintiff's request that the court order defendants Dutch Lane, MLG Properties, and Morton Ginsberg to pay over all rents received during the period of the defendants default or alternatively grant plaintiff an equal amount of money damages. Defendants argue that the plaintiff is not entitled to such equitable relief under the mortgage or New York law. Here, the court must address two issues. First, we must determine whether the assignment of rents clause in paragraph 26 of the mortgage is an absolute, unqualified, and self-executing obligation on the part of the defendants in the event their default. To resolve this issue, the court begins with the actual terms of the mortgage.

Paragraph 26 of the mortgage covers the assignment of rents. It specifically states that the Borrower, here Dutch Lane,

hereby absolutely and unconditionally assigns and transfers to Lendor [FHLMC] all rents and revenues of the Property, including those now due, past due, or to become due ... it being intended by Borrower and Lendor that this assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

The meaning of this provision is painfully clear: the assignment of rents to the FHLMC was intended to be absolute and unconditional. According to paragraph 26, so long as Dutch Lane had not been given written notice of a breach of the mortgage by the Lendor, Dutch Lane's status in receiving rents from the property was only that of a trustee for the Lender and Borrower. However, this trusteeship changes once a breach by the Borrower, Dutch Lane, occurs:

Upon delivery of written notice by Lendor to Borrower Lane of the breach by Borrower of any covenant or agreement of Borrower in this Instrument, and without the necessity of Lendor entering upon and taking and maintaining full control of the Property in person, by agent or by a court-appointed receiver, Lendor shall immediately be entitled to possession of all rents and revenues of the Property as specified in this paragraph 26 as the same become due and payable, including but not limited to rent then due and unpaid, and all such rents shall immediately upon delivery of such notice be held by Borrower as trustee for the benefit of Lendor only; provided, however, that the written notice by Lendor to Borrower of the breach by Borrower shall contain a statement that Lendor exercises its rights to such rents.

The import of this language and the intent of the parties are unmistakable. Once the FHLMC notifies Dutch Lane in writing of a breach of the mortgage and states it is exercising its rent rights, the FHLMC is

immediately entitled to all rents without any further action required. Contrary to defendants position in their brief, to activate its right to the rents the FHLMC need not take any affirmative steps to obtain possession of the Property such as seeking the designation of a court-appointed receiver. In fact, the provision explicitly states that the appointment of a receiver is not necessary to exercise its rights to rents.

The sole precondition was the delivery of written notice to the Borrower, Dutch Lane, that it was in fact exercising its right to immediate possession of all rents. Furthermore, according to the mortgage's terms, FHLMC's right to rents expressly applies to all rents, including those already due but as yet unpaid, not merely rents accumulating after notice of default has been provided. Dutch Lane, as plaintiff's trustee under the mortgage, has no independent right to any of the rents it received. In this case, the FHLMC notified Dutch Lane by a letter dated October 8, 1990 that it was demanding payment in full of all mortgage payments past due. The letter specifically stated, in block letters, that the FHLMC was exercising its rights to all rents and revenues generated by the Property. As a result, Dutch Lane owes FHLMC, the beneficiary of their trust relationship, any rents since Dutch Lane's default presently past due but still not delivered to the plaintiff.[4] This obligation stands independently from the mortgage installments for the principal and interest due to FHLMC.

Surveying the many cases cited by defendants in their opposition memorandum leaves the court unconvinced at best. Cases like *Dime Savings Bank of Brooklyn v. Altman,* 249 A.D. 174, 291 N.Y.S. 417 (2d Dep't 1936), *aff'd* 275 N.Y. 62, 9 N.E.2d 778 (1937), *Remer v. 170 Broadway Holding Corp.,* 244 A.D. 322, 279 N.Y.S. 678 (1st Dep't 1935), *aff'd* 272 N.Y. 442, 3 N.E.2d 860 (1936), and *E.G. Ganbaum v. Rockwood Realty Corp.,* 62 Misc.2d 391, 308 N.Y.S.2d 436 (1970) cited by Defendants are inapplicable here. In those cases, the rents were expressly assigned as additional security only; they were neither absolute nor independent obligations. As a result, they bear no resemblance to the rent provisions in this case. Furthermore, in cases like *1180 Anderson Avenue Realty Corp. v. Mina Equities Corp.,* 95 A.D.2d 169, 465 N.Y.S.2d 511 (1st Dep't 1983) holding the right to rents is tied to right of possession, the mortgage in question specifically included a prior demand condition denying the collection of rents until Lender took possession of the property.[5] Such rent assignment provisions have no bearing on this case because here the rent assignment is an "absolute" right of the Lender.

The second issue with regard to the assignment of rents concerns which defendants are liable for the rents not yet paid to the FHLMC. Plaintiff contends that the general partners of a partnership are jointly liable for the debts of the partnership. Plaintiff correctly directs the court to New York's Partnership Law Sec. 26(2). That section states that except for liability stemming from the wrongful acts or breaches of trust by partners, "all partners are liable jointly for all other debts and obligations of the partnership." New York State Partnership Law Sec. 26(2). Courts

---

4. The non-recourse provision does not bar recovery of rents from defendants for two reasons. First, it is inapplicable to the Defendants' absolute and independent assignment of rents obligations. Their payment was not part of the monthly installments of principal and interest. Dutch Lane received all rents as the trustee of the FHLMC and its obligation to turn them over to plaintiff is not subject to the non-recourse provision. Second, the parties executed a separate assignment of rents contract that falls outside the boundaries of the non-recourse provision which expressly limits its coverage to "anything contained herein [in the mortgage contract]." It seems reasonable to conclude that this was done precisely for the reason of removing the assignment of rents obligation from the non-recourse limitation.

5. The court in *Anderson Avenue Realty* also recognized that under New York law the parties to a mortgage could contract to allow for immediate possession of property in default without a prior demand condition. *See 1180 Anderson Avenue Realty Corp.,* 465 N.Y.S.2d at 514. The court stressed that it would enforce the provisions of the mortgage which were clearly expressed. *See id.*

interpreting this section have held that a partner's liability is limited to where the partnership is insolvent, unable to pay its debts, or no effective remedy exists without holding partners personally liable. *See Cunard Line Ltd. v. Abney*, 540 F. Supp. 657, 659–60 (S.D.N.Y.1982); *Meyer v. Park South Associates*, 159 A.D.2d 337, 552 N.Y.S.2d 614 (1st Dep't 1990).

Plaintiff has offered nothing to demonstrate Dutch Lane's formal insolvency. However, plaintiff presented evidence that Dutch Lane has defaulted on its mortgage payments since April 1, 1990. Plaintiff also offers affidavits stating that settlement negotiations failed precisely because Dutch Lane was unable to proffer any lump sum payments towards its arrears. Decea Affidavit at 3. The court, however, will not draw the inference from these contentions that no effective remedy exists for plaintiff against Dutch Lane other than holding its general partners personally liable. At this point, Dutch Lane's ability to meet its debts is a disputed factual issue. Although Dutch Lane's absolute, present obligation to the FHLMC for all rents is certain as a matter of law, whether Dutch Lane can meet its debts should be decided by the trier of fact.

As a result, since we decide the defendants' affirmative defenses fail as a matter of law, plaintiff's summary judgment motion for foreclosure is granted. As a corollary, defendants' cross-motion to dismiss the complaint against MLG Properties is denied. The court orders Dutch Lane to turn over to plaintiff all rents since its default. However, ordering Dutch Lane's general partners to personally remit the rents due is inappropriate at this juncture.

### C. Cross Motion to Dismiss

Based upon uncontradicted evidence offered by affidavit, the court also dismisses plaintiff's complaint against Morton L. Ginsberg. Plaintiff offers no evidence showing Ginsberg to be a general partner in Dutch Lane and thus subject to liability for its mortgage obligations. In fact, at oral argument, plaintiff's counsel conceded that Ginsberg was not a general partner in Dutch Lane. The court notes that the mortgage identifies Ginsberg as MLG's President. At this point plaintiff has offered no reason why he could be held personally liable for the partnership's debts. Therefore, the complaint against him is dismissed. However, MLG Properties is indisputably a general partner of Dutch Lane and therefore remains a proper defendant in this case.

### III. CONCLUSION

In conclusion, the court grants plaintiff's default judgment and its summary judgment for foreclosure and sale of the property are granted. In so doing, the court rejects defendants Dutch Lane, Ginsberg, and MLG's third affirmative defense of insufficient service of process and concurrently denies defendants cross motion for dismissal. Additionally, we order defendant Dutch Lane to turn over to the FHLMC all rents received and not yet provided to plaintiff. Finally, the court dismisses the complaint against defendants "John Doe No. 1 to 77" and against defendant Ginsberg individually.

SO ORDERED.