65 P.3d 1029

REARDEN FAMILY TRUST, Janice Rearden, Michael Rearden, Michael Rearden, Guardian ad Litem for Ryan John Rearden, Plaintiffs–Appellees,

v.

Michael WISENBAKER, Defendant–Appellant,

and

Stacy Marion Steffens, Midland Enterprises, Inc., Claudette Selak–Simon, Philip Bogetto, Doe Corporations 1–10, John Does 1–10, Jane Does 1–10 and Doe Attorneys 1–10, Defendants.

No. 21937.

Supreme Court of Hawai'i.

March 25, 2003.

Michael W. Moore (Menezes Tsukazaki Yeh & Moore), on the briefs, Hilo, for defendant-appellant.

Nicole L. Ezer, on the briefs, for plaintiffs-appellees Rearden Family Trust, Janice Rearden, and Michael Rearden, Guardian ad litem for Ryan John Rearden.

Michael Rearden, on the briefs, plaintiff-appellee pro se.

MOON, C.J., LEVINSON, NAKAYAMA, and ACOBA, JJ., and Circuit Judge AHN assigned by reason of vacancy.

Opinion of the Court by ACOBA, J.

We hold that Defendant–Appellant Michael Wisenbaker (Defendant) waived the defense of lack of personal jurisdiction under Hawai'i Rules of Civil Procedure (HRCP) Rules 12(b), (g), and (h) by failing to raise it in his

pre-answer motion. However, we further hold that the third circuit court [1] (the court) erred in denying Defendant's motion to set aside the June 9, 1997 default judgment on liability rendered against him (motion to set aside). The default judgment had been entered pursuant to HRCP Rule 16 (1997) and Rules of the Circuit Courts of the State of Hawai'i (RCCH) Rule 12.1(a)(6) (1997) for Defendant's failure to appear personally at a settlement conference with his counsel and at a subsequent order to show cause (OSC) hearing to determine why such judgment should not be entered.

We conclude that the court had inherent power to require both a party and the party's counsel to attend a settlement conference. However, at subsequent hearings on Defendant's motion to set aside, the court suspended its decision on that motion and ordered the parties to engage in settlement conferences of the sort Defendant had failed to previously engage in, and for which failure default judgment had been entered. Defendant thus did engage in settlement negotiations.

Under these and the other circumstances we discuss herein, we conclude that the court's ultimate denial of Defendant's motion to set aside exceeded the bounds of reason. Accordingly, we vacate the July 17, 1998 judgment entered in favor of Plaintiffs–Appellees Rearden Family Trust (the Family Trust), Janice Rearden, Michael Rearden, and Ryan Rearden [2] (collectively, Plaintiffs) following a jury trial on damages and remand the case for disposition consistent with this opinion.

## I.

### A.

In 1985, Foundation Epsil Vaduz Liechtenstein (Foundation Epsil) purchased a parcel of real property consisting of approximately ten acres in North Kohala on the island of Hawai'i (the property). Foundation Epsil was a Liechtenstein corporate entity, created to administer the Family Trust. The property was the only asset it held. Michael was one of the board of "protectors" of Foundation Epsil. Plaintiffs' attorney, Jonathan Ezer, was the attorney-in-fact for Foundation Epsil.

On June 25, 1991, Midland Enterprises, Inc. (Midland) brought a suit in the third circuit in Civ. No. 91–290 against Michael, J. & J.S.R.T., Inc.,[3] and Foundation Epsil to enforce a California State court judgment against Michael assigned to it by Claudette Selak–Simon.[4] The suit sought recovery of $277,156.12 and an injunction prohibiting the sale of the property. The complaint stated that Midland is "a Texas Corporation with its major office of business in Dallas, Texas."

---

1. The Honorable Riki May Amano presided over this matter.

2. Michael was also a plaintiff in his capacity as guardian ad litem for Ryan.

3. The initials seem to represent "John and Josephine Selak 1981 Revocable Trust."

4. As to the judgment, the complaint in Civ. No. 91–290 alleged in part as follows:

 6. On November 3, 1983, Claudette Selak–Simon filed an action against [Michael] entitled *Claudette Selak–Simon, Plaintiff v. Roark McGonigle, [aka Michael,] et al.*, No. C 474214, in the Superior Court of the State of California for the County of Los Angeles. The action alleged that [Michael] misappropriated Plaintiff Selak–Simon's funds for his own person[al] use and profit....

 7. On September 25, 1984, a default was entered for his failure to to [sic] answer or otherwise defend against the Complaint. On July 1, 1985, a Judgment by the Court After

Default ("Judgment") was entered against [Michael] in the amount of $277,156.12, together with interest on the said Judgment....

....

 10. Pursuing enforcement of the Judgment against any available assets of [Michael] in the State of Hawai'i, Selak–Simon filed the Judgment as an Exemplified Foreign Judgment in the Third Circuit Court of the State of Hawai'i, on June 26, 1989, in that certain special proceeding entitled *Claudette Selak–Simon v. Roark McGonigle, aka Michael Reardon [sic], et al.*, S.P. Np. [sic] 89–014, Third Circuit Court, State of Hawai'i. The exemplified Foreign Judgment was entered pursuant to Hawaii Revised Statutes Chapter 636C (Uniform Enforcement of Foreign Judgment Act) in favor of Claudette Selak–Simon and against [Michael] in the amount of $277,156.12 plus interest provided by law....

 11. On March 16, 1991, Claudette Selak–Simon assigned the Exemplified Foreign Judgment to Midland Enterprises, Inc....

Attorney Philip Bogetto represented Midland in the suit. The court dismissed the Midland suit on January 26, 1993, after Michael had the underlying California default judgment set aside.

### B.

On July 2, 1991, Stacy Marion Steffens brought a suit in the third circuit in Civ. No. 91–285 against Michael and Foundation Epsil to enforce an alleged agreement[5] between Steffens, Michael, and Foundation Epsil for the payment of one million dollars, which was to be secured by a lien on the property. The court granted the defendants' motion to dismiss the Steffens suit with prejudice and the Intermediate Court of Appeals (ICA) affirmed the dismissal by summary disposition order. *See Steffens v. Rearden,* 84 Hawai'i 268, 933 P.2d 105 (App.1997).

### II.

### A.

On December 22, 1993, Plaintiffs brought the present action against Defendant, Midland, Selak–Simon, Bogetto, and Steffens, claiming malicious prosecution, abuse of process, intentional infliction of emotional distress, tortious . interference with contract, slander of title, defamation, and punitive damages arising out of the June 25, 1991 suit brought by Midland (Civ. No. 91–290) and the July 2, 1991 suit brought by Steffens (Civ. No. 91–285). As a result of the defendants' conduct, Plaintiffs alleged that "a sale of the subject property was lost," resulting in "financial loss." As to Defendant, the complaint states in part that (1) "[Defendant] was a resident of the State of Texas, doing business in the State of Hawai'i"; (2) "[a]t all times [Defendant] controlled [Midland] ... and used said corporation as his alter ego"; (3) "[o]n or about June 25, 1991, [Defendant[6]] filed a Complaint No. 91–290 against [Michael], Foundation Epsil who transferred their [sic] interest to [the Family Trust] and [Janice]"; (4) "[Defendant]'s Complaint was based on a fraudulently obtained California Judgment which he obtained from [Selak–Simon] and had transferred to himself for the sole purpose of harassing [Michael]"; and (5) "[t]he sole purpose of [Defendant]'s filing of the complaint was to vex and harass [Michael]. [Defendant]'s and Selak–Simon's actions were intended to be vindictive and for the sole purpose of causing harm to [Michael.]"

On July 13, 1994, the court filed a notice of dismissal as to all of the defendants for want of service under RCCH Rule 28.[7] On July 20, 1994, Michael filed objections to the dismissal and requested a six-month extension to complete service "either directly or by substituted service." In response, the court ordered, on July 25, 1994, that the notice of dismissal be withdrawn "on condition that" service of the complaint be completed within ninety days. According to Michael's affidavit, "[o]n September 2, 1994, [he] caused a certified copy of the Complaint and Summons ... to be served on [Defendant], by registered mail[.]" Exhibit A to Michael's affidavit, a postal service return receipt, is marked "restricted delivery" and "insured" and Defendant's name is signed below the words "Signature (Addressee)[.]"[8]

---

5. The complaint in Civ. No. 91–285 alleged, as to the purported agreement, as follows:

> 3. On or about May 5, 1990, for good and valuable consideration[,] the parties hereto entered into a written agreement, wherein Defendants [Michael] and Epsil agreed to pay Plaintiff in excess of $1,000,000 and to secure same with an interest in real property located in Hawai'i and identified by Tax Map Key # 5–7–001:005 in which Defendant [Michael] represented he had interest.
>
> 4. Defendant[s] have failed to make said payments and are indebted to Plaintiff in a sum in excess of ONE MILLION ($1,000,-000.00) DOLLARS.

6. Plaintiffs contend that Defendant filed the complaint in Civil No. 91–290. However, that complaint names Midland as the plaintiff and does not mention Defendant.

7. RCCH Rule 28 provides as follows:
 · **Dismissal for Want of Service.**
 A diligent effort to effect service shall be made in all actions, and if no service be made within 6 months after an action has been filed then after notice of not less than 5 days the same may be dismissed.

8. On appeal, Defendant does not challenge Michael's representation that Defendant was served by "registered mail." Accordingly, we accept as undisputed Michael's statement to that effect.

On September 27, 1994, Defendant, Midland, Bogetto, and Steffens moved to dismiss Plaintiffs' complaint. At this point, Bogetto represented himself, Defendant, Midland, and Steffens. Defendant argued, *inter alia,* that service by certified mail was not authorized. The motion did not assert the defense of lack of jurisdiction. In their January 18, 1995 memorandum in opposition to the motion to dismiss, Plaintiffs maintained that "[Defendant] was served properly in the State of Texas pursuant to [HRS §§ ] 634–35 and 634–36."

In a January 20, 1995 telephone conference regarding the motion to dismiss, the court ruled that "there [would be] no oral argument"[9] and asked "whether [the parties] ha[d] anything to add to [their] position[s] at [that] point." Michael asserted that the "statute" allowed him to serve by "registered mail when a person has engaged in a business activity in the State of Hawai'i." When the court asked Bogetto if there was any thing he would like to say, he said, "No." The court denied for "good cause" the motion to dismiss. On February 21, 1995, the court *sua sponte* dismissed Selak–Simon and Midland for lack of service under RCCH Rule 28.

### B.

Defendant, Bogetto, and Steffens answered the complaint on July 21, 1995. In the answer, Defendant: admitted that "he is a resident of the State of Texas," but "denie[d] doing business in the State of Hawai'i"; stated that he had "insufficient information to form a belief as to the truth or falsity of" Plaintiff's allegation that Midland was Defendant's alter ego; asserted, *inter alia,* the defenses of lack of personal jurisdiction and insufficient service;[10] and counterclaimed for malicious prosecution, abuse of process, and punitive damages.

On December 2, 1996, the court issued an order setting pretrial conferences pursuant to HRCP Rule 16. The order set for discussion, among other matters, settlement of the case.

On March 11, 1997, the court issued an order establishing the trial schedule and noticing a settlement conference to take place on April 12, 1997, pursuant to RCCH Rule 12.1. The order stated that "[c]lients ... *shall be present* at the Settlement Conference, unless expressly waived by the judge" and that "*a Settlement Conference Statement is required.*" (Emphases added.) The order cautioned as follows:

This Order shall in no way supersede any applicable court rule; the requirements and deadlines herein are in addition to those set out by court rules. *A violation of any part of this Order is subject to appropriate sanctions including dismissal of the case or entry of default judgment.*

(Emphasis in original.)

### III.

On April 7, 1997, Defendant, Bogetto, and Steffens timely filed their settlement conference statement. Plaintiffs did not file their settlement conference statement until June 10, 1997. The court did not impose any sanctions for Plaintiffs' violation of its order.

On April 11, 1997, a telephone conference was held. During the conference, the court rescheduled the settlement conference from April 12, 1997, to Sunday, April 20, 1997, because Defendant had a prior business commitment on April 12.

On April 18, 1997, Defendant filed an affidavit dated April 15, 1997, requesting that the court continue the settlement conference set for April 20. The affidavit averred in pertinent part that: (1) one of his office's clerical personnel signed a certified receipt for certified mail by which Plaintiff sent their complaint to Defendant; (2) "[Defendant] ha[s] been informed by local counsel that, consequently, service on [him] in [his] individual capacity was improper and that [he is] not properly before this Court"; (3) on April 11, 1997, if Bogetto had Defendant, who was

---

**9.** There is no indication as to why the court precluded the parties from presenting argument.

**10.** Other defenses were that the complaint failed to state a claim, that Michael and Janice were fictitious names for Charles McGonigle and Janice Williams, and that the Family Trust was not a proper trust.

in his office in Texas, Dallas, attend the conference call, Defendant "would have then informed the Court that [he was] unable to travel from Dallas, Texas to Hilo, Hawaii the weekend of April 20, 1997"; (4) Defendant's mother who usually takes care of Defendant's eighty-four-year-old father had "long standing plans to travel" and "this situation require[d his] personal attention ... the weekend of April 17 through April 20, 1997"; (5) "[u]nfortunately, no alternative exist[ed] and [Defendant] must request a continuance of the settlement conference for Sunday, April 20, 1997, if [his] personal appearance is required"; (6) "[a] settlement conference requiring [Defendant's] personal appearance from Dallas, Texas [was] an extreme personal hardship and is not justified by the frivolous allegations made against [him] personally"; and (7) "[Defendant] request[ed] that the court reconsider its order that [he] personally appear in Hilo, Hawai'i on April 20, 1997 and allow [his] counsel, Philip D. Bogetto, to appear on [his] behalf." Diane M. Guevremont stated in her affidavit in pertinent part that "[a]round the first of the year of 1994 during a routine mail pick-up, I personally signed the return receipt for a certified package from Hawai'i." [11]

The court denied Defendant's request to continue the April 20, 1997 settlement conference at the time of the conference itself. Defendant and Steffens did not attend the conference. Bogetto did attend and maintained that he appeared on behalf of himself, Defendant, and Steffens. On the same day, Bogetto informed Defendant by telephone that the court had denied Defendant's continuance request.

In an amended settlement conference statement filed on April 21, 1997, Defendant reserved the defense of lack of jurisdiction based on insufficient service of process. Defendant stated in pertinent part as follows:

*[Defendant] has never been served with a copy of the complaint herein, as required by [HRS] § 634-24 and Rule 4(d)(1) of the [HRCP] and therefore states that this Court has no personal jurisdic-*

*tion over him.* The settlement conference statement was only submitted in order to protect his rights until such time as this Court rules on the motion for summary judgment to be heard on May 28, 1997 at 8:30 a.m.

[Defendant] specifically does not waive any defense that the [sic] may have, under Rule 12(b)(2) and (5) of the [HRCP], alleging lack of personal jurisdiction over him and insufficiency of service of process.

*Plaintiffs have failed to serve him, as required under [HRS] § 634-24, since the files and records in this case reflect no court order[ ] authorizing service by Certified Mail and any certified mail sent by Plaintiffs was not addressed to addressee only, and there is no return receipt showing personal service on [Defendant].*

[Defendant] incorporates herein his affidavit submitted for filing on April 15, 1997 and the affidavit of [Guevremont]. [Defendant] asserts all of his HRCP Rule 12(b)(2) and (5) defenses to any claim by Plaintiffs against him personally.

(Emphases added.)

## IV.

### A.

On April 22, 1997, the court issued a "Court Order Re: Settlement Conference" stating, *inter alia,* that an "[OSC] will be issued against [Defendant] and [Steffens] for failing to appear at the Settlement Conference held on April 20, 1997, and to explain to the Court why Default Judgment should not be ordered against them." In the April 22, 1997 order, the court emphasized: (1) that its "Court Order Re: Rule 16 Conference and Setting Civil Trial Schedule filed on March 11, 1997, specifically required the personal presence of all parties in order to facilitate a meaningful discussion of settlement alternatives"; (2) that "[a] **violation of any part of** th[e April 22, 1997 o]rder is subject to **appropriate sanctions including dismissal of the case or entry of default judgment**"; and (3) that "Defendants shall proffer a set-

---

**11.** Apparently, Guevremont signed Defendant's name because the signature on the return receipt states "M B Wisenbaker."

tlement offer in writing to Plaintiffs on or before April 28, 1997" and "Plaintiffs shall respond ... on or before May 5, 1997." [12] (Boldfaced type in original.)

The court filed the OSC as to Steffens on April 23, 1997 and as to Defendant on April 24, 1997. These orders also provided in pertinent part as follows:

> YOU ARE ORDERED to appear before ... the Circuit Court of the Third Circuit, 75 Aupuni Street, Hilo, Hawai'i 96720 on **Wednesday, May 28, 1997 at 8:30 a.m.** *to show cause why default judgment should not be granted against you in the above-captioned case for failing to personally appear for the settlement conference held on April 20, 1997.*

(Boldfaced type in original; emphasis added.)

### B.

On April 23, 1997, Defendant, Steffens, and Bogetto filed a motion for summary judgment. In the motion, Defendant again raised the defense of lack of personal jurisdiction on the basis that he was never properly served, as required by HRS § 634–24 (1993). The hearing on the motion was scheduled for May 28, 1997.

On April 28, 1997, Defendant, Steffens, and Bogetto filed a motion to continue the May 28, 1997 summary judgment hearing since Bogetto would be traveling out of the State of Hawai'i from May 11, 1997 to May 28, 1997. In the affidavit attached to the motion to continue, Bogetto stated that, "[o]n May 11, 1997 *through May 28, 1997, I will be out of the State* of Hawai'i and am unable to change my schedule." (Emphasis added.) By stipulation of the parties, the court continued the summary judgment hearing date to June 6, 1997.

On May 9, 1997, the OSC was personally served on Defendant in Dallas, Texas. On May 28, 1997, the OSC hearing was held.

Defendant and Bogetto did not appear at the hearing. Steffens appeared and explained to the court that she had not attended the settlement conference because she had been ill. The court accepted Steffens's explanation, did not enter default against her, and ordered that she appear at the next settlement conference. The court then noted Defendant's failure to appear and summarily entered "default judgment in favor of Plaintiffs and against [Defendant]."

In their June 2, 1997 memorandum in opposition to the April 23, 1997 motion for summary judgment, Plaintiffs contended, *inter alia*, that "[Defendant] has been properly served," "made several general appearances in this action," and "lost a previous [m]otion to dismiss on the basis of lack of service." The court apparently did not rule on the motion for summary judgment.

On June 9, 1997, the court entered default judgment against Defendant and in favor of Plaintiffs. The default judgment stated in relevant part as follows:

> Defendant ... was ordered to appear ... in the Circuit Court of the Third Circuit .... on Wednesday, May 28, 1997 at 8:30 a.m. An Order to Show Cause ("OSC") why default judgment should not be granted against him for failing to appear for the settlement conference held on April 20, 1997, was served on Defendant ... personally on May 9, 1997. Defendant ... did not respond to the OSC or appear on the prescribed date and time.
>
> Accordingly, DEFAULT JUDGMENT IS HEREBY ORDERED, ADJUDGED AND DECREED against Defendant ... and in favor of Plaintiffs.... [13]

On June 10, 1997, Plaintiffs filed their settlement conference statement.

---

**12.** The record does not indicate what followed from this part of the order, although settlement negotiations did subsequently take place in August 1997. *See* discussion *infra*.

**13.** Although not evident from the order, default judgment was apparently entered with respect to liability but not damages. *See Kam Fui Trust v. Brandhorst*, 77 Hawai'i 320, 325, 884 P.2d 383,

388 (App.1994) (holding that "the entry of default under RCCH Rule 12.1(a)(6)(i) for failure to follow settlement conference requirements ... precludes a defaulted defendant from contesting liability in any proof hearing held as a result of the default, although the defaulted defendant may still contest the amount of its liability").

## V.

On July 7, 1997, Defendant filed his motion to set aside. In an accompanying affidavit, Bogetto indicated in pertinent part that Defendant had not been properly served and that Bogetto had understood that the OSC hearing would not take place on May 28, 1997, but, rather, on the later date set for defendants' motion for summary judgment. Bogetto's affidavit stated in pertinent part that: (1) he moved to dismiss the case on the grounds that "[Defendant] was never properly served in his individual capacity, as required by Rule 4(e) of the [HRCP] and [HRS] § 634–24"; (2) Bogetto was not informed of the court's issuance of the OSC until May 29, 1997; (3) Bogetto "had understood that the hearing on the [OSC], if served upon [Defendant], would take place subsequent to the hearing on the Defendant's Motion for Summary Judgment, which had been scheduled for May 28, 1997"; [14] (4) "[Defendant]'s non-appearance at the settlement conference did not delay prosecution of the complaint, cause actual prejudice to any Plaintiff[,] and was not clearly contumacious"; (5) "[Defendant] was represented by counsel at the settlement conference and filed a settlement conference statement[, but] Plaintiffs never filed a settlement conference statement"; and "Rule 12.1(a)(2) of the [RCCH] require [sic] the presence of counsel or a party if not represented by counsel at the settlement conference."

Reid Heller, Defendant's Texas counsel, stated in an affidavit dated August 5, 1997, in pertinent part that: (1) "[i]n the second week of May, 1997, [Heller] spoke with [Bogetto] who stated to [him] that a hearing on a[n OSC], set for May 28, 1997, would be continued until after a pending summary judgment hearing then scheduled on or about June 9, 1997"; (2) "[Heller] reported Mr. Bogetto's statements to [Defendant and i]n reliance on Mr. Bogetto's representations, [Heller] concluded that there was no need to attend any hearing on May 28, 1997"; and (3) "[t]he first time that [Heller] learned that a default had

been entered was on around June 20, 1997[and] Mr. Bogetto never informed [him] of the outcome of the hearing, that a hearing had indeed gone forward on May 28[,] or that any other hearing had been set in June."

On July 31, 1997, Defendant, Steffens, and Bogetto moved to continue trial, on the ground that "Bogetto had a potential conflict of interest" and "a continuance of the trial date [was] needed for [Defendant] to obtain the services of new counsel and for new counsel to become familiar with this case."

On August 8, 1997, a hearing on the motion to continue was held. At the hearing, Defendant stated that, prior to May 28, 1997, Bogetto advised him that the OSC hearing would be heard after the hearing on the motion of summary judgment set in early June. Defendant stated that (1) he and his attorneys in Dallas, Texas, "were assured that there was a summary judgment hearing in early June and—and this order to show cause was subsequent to the summary judgment hearing" and that (2) "[Bogetto] assured [them] that [the OSC hearing] had been moved until after the summary judgment hearing ... [and] said he felt ... that [the] summary judgment hearing would dispose of the matter."

Bogetto stated that: (1) "what [he] believe[s he] had said was that the [OSC] was going to be heard after the motion for summary judgment which was originally scheduled for the 28th"; (2) "the motion for summary judgment got moved because [he] was not going to be here in Hawai'i on the 28th and it was scheduled till June 6th"; (3) "[he] did represent ... that since [they] had a motion for summary judgment on the 28th, your Honor was going to hear the [OSC] after the hearing on the motion on the 28th"; (4) "[Bogetto] do[es] not specifically recall telling [Defendant and his attorneys] that the [OSC] hearing was going to be moved from the 28th to June 6th, but [he] did tell them that the hearing was going to be held after ... the hearing for—on the motion for summary judgment"; and (5) "[t]he assumption

---

14. Bogetto also stated as follows:

 10. Because I was not going to be in the State of Hawai'i on May 28, 1997, Plaintiffs and I agreed to continue the hearing on Defen-

dant's Motion for Summary Judgment to June 6, 1997.

 11. Unfortunately, no clarification was made as to the return on the [OSC].

[Bogetto] believe[s] was—drawn was that [the OSC hearing] would come on after June 6th[.]" The court then set both a hearing on the motion to set aside the default and a settlement conference for September 12, 1997. The court stated that "the motion to set aside the default, that is currently set for ... August 13th[,] is going to be moved to Friday, September 12th at 11 a.m., and counsel should be prepared to meet thereafter to discuss the possibility of settlement."

On August 28, 1997, Bogetto withdrew as Defendant's counsel and Michael Moore appeared as Defendant's counsel.

## VI.

On September 9, 1997, Defendant filed a supplemental memorandum in support of the motion to set aside. On September 12, 1997, Defendant appeared in person with his new counsel, Moore. Moore indicated that settlement proposals had been made to Plaintiffs and that Defendant was willing to participate in settlement proceedings. Also, Moore requested the court to vacate the default judgment and to impose a less drastic sanction in the form of monetary compensation for time lost and costs of counsel.

Regarding Defendant's failure to attend the first settlement conference, Bogetto stated, in response to the court's questions, as follows:

COURT: Didn't you communicate to [Defendant] the need to be present at these settlement conferences?

BOGETTO: *I told him that the order said that he was to be present, and that was why he submitted his request asking that his appearance be waived or that the matter be continued because I did provide him with a copy of the Court's order.*

COURT: So there was nothing there, uh, that could have constituted a miscommunication of some sort, leading a mis-

communication of some sort, leading [Defendant] to believe his presence was not required?

BOGETTO: *Well, [Defendant], I mean, did ask that he participate by telephone.*

COURT: *And did you communicate anything to him, say anything to him, seemed anything to him that would lead him to believe that his presence was not required? That the Court was going to allow participation by phone conference?*

BOGETTO: I didn't tell him that the Court would allow participation by phone conference, but that I would make his request known to him [sic].

COURT: And when you did and you got a response, did you communicate that response to him? [15]

BOGETTO: I believe I did.

(Emphases added). The court deferred ruling on the motion and instead conducted a settlement conference.[16]

On September 25, 1997, Defendant filed a supplemental affidavit in support of the motion to set aside. On October 17, 1997, Defendant personally appeared at another hearing on this motion. The court indicated that it was "not going to make a decision on the Motion to Set Aside Entry of Default till 1:00, at which time all I'm going to do is make my decision for the record." A settlement conference followed after the morning session and the hearing was reconvened at 1:05 p.m.

At that point, the court described what Plaintiffs had authorized the court to offer Defendant to settle the case and noted that Defendant requested fourteen days to make a counter offer. The court indicated that it would defer ruling on the motion to set aside "at the request of all the parties" and ordered the parties to participate in a telephone conference on November 17, 1997 to discuss whether they had arrived at a settle-

---

15. It is unclear from the record whether the court agreed to permit Defendant to attend the conference via telephone, but the context of the discussion appears to indicate otherwise.

16. When Moore requested the court to "allow [Defendant] to proceed and have the opportunity to prove that he's not liable in this case on the

merits[,]" the court responded, "I'll make a ruling at 1:00 in open court." The court explained, "At 1:00 we're reconvening anyway for the decision on the motion to set aside the entry of default, ... and, hopefully, we've reached a settlement." The record does not contain a reference to the court's reconvening.

ment. The court declared that it would rule on the motion if the parties had not settled at that time. The court stated in pertinent part that it "intend[s] to make a decision on this motion thirty days from today" and that it "[is] going to give [the parties] a phone conference time so that either [party] can request—record [their] settlement, if it's settled, or alternatively the Court will make a decision or give its decision over the phone to counsels."

Steffens did not appear at the settlement conferences held on September 12, 1997 and October 17, 1997. The court did not impose any sanctions on Steffens for these violations of the court's orders.

On November 17, 1997, the parties advised the court by telephone that they had not settled. The court then summarily denied Defendant's motion to set aside. On January 26, 1998, the court entered a written order to that effect.

On February 13, 1998, Plaintiffs moved to dismiss Bogetto and Steffens as party defendants. On May 1, 1998, the court issued an order setting trial for June 29, 1998. On May 29, 1998, the court granted Plaintiffs' motion to dismiss Bogetto and Steffens. [RV4 at 139–42, 145–48.]

## VII.

The jury trial on damages was conducted from June 30, 1998 to July 8, 1998. At the close of Plaintiffs' case, Defendant moved for a directed verdict. The court granted the motion as to the malicious prosecution claims asserted by Michael, Ryan, and Janice, but allowed the malicious prosecution claim made by Family Trust to go to the jury.

On July 8, 1998, the jury returned its verdict. The court entered a judgment on the verdict on July 10, 1998. The court entered an amended judgment against Defendant on July 17, 1998, awarding: (1) $2,000,000 to Family Trust on its malicious prosecution claim; (2) $500 to Janice and

$5,000 to Michael for general damages on their intentional infliction of emotional distress claims; (3) $30,000 in special damages on Michael's intentional infliction of emotional distress claim; and (4) $1,000,000 to Family Trust and $1 to Michael in punitive damages. On September 10, 1998, the court denied Defendant's motions for judgment notwithstanding the verdict and for a new trial.

## VIII.

On September 25, 1998, Defendant appealed. He raises five points of error. We consider two points, that is, (1) that the court lacked personal jurisdiction over Defendant and (2) that the court abused its discretion in entering default judgment and denying his motion to set aside.[17]

## IX.

### A.

In his first argument, Defendant asserts that the court could not exercise personal jurisdiction over him. Citing *Shaw v. North Am. Title Co.*, 76 Hawai'i 323, 876 P.2d 1291 (1994), Defendant asserts that he did not have "sufficient 'minimum contacts'" with the State of Hawai'i and, thus, "the maintenance of the suit ... offend[ed] 'traditional notions of fair play and substantial justice.'" *Id.* at 329–30, 876 P.2d at 1298 (internal citations omitted). According to Defendant, his only contacts with Hawai'i were his alleged involvement in the Midland and Steffens lawsuits.

Although Plaintiffs fail to point it out, Defendant's failure to raise the defense of lack of personal jurisdiction in his September 27, 1994 motion to dismiss precludes him from raising the defense on this appeal. In that motion, Defendant alleged insufficient service of process and failure to state a claim upon which relief could be granted as his defenses,

17. Defendant's other three contentions are: (1) that the court erred in failing to dismiss or enter directed verdict or judgment notwithstanding the verdict as to the Family Trust's malicious prosecution claim; (2) that the court erred in allowing Ezer, who was the attorney-in-fact for Founda- tion Epsil, to testify at trial; and (3) that the court abused its discretion in refusing to give jury instructions concerning the transfer of a chose in action and a limiting instruction regarding Ezer's closing argument.

but not lack of personal jurisdiction. He first raised the personal jurisdiction defense later in his July 21, 1995 answer and again in his opening brief.

### B.

HRCP Rule 12 provides, in pertinent part, as follows:

(b) **How Presented.** Every defense . . . shall be asserted in the responsive pleading thereto if one is required, *except that the following defenses may at the option of the pleader be made by motion:* (1) lack of jurisdiction over the subject matter, (2) *lack of jurisdiction over the person,* (3) improper venue, (4) insufficiency of process, (5) *insufficiency of service of process,* (6) *failure to state a claim upon which relief can be granted,* (7) failure to join a party under Rule 19. A motion making any of these defenses shall be made before pleading if a further pleading is permitted. . . .

. . . .

(g) **Consolidation of Defenses in Motion.** A party who makes a motion under this rule may join with it any other motions herein provided for and then available to him [or her]. *If a party makes a motion under this rule but omits therefrom any defense or objection then available to him [or her] which this rule permits to be raised by motion, he [or she] shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h)(2) hereof on any of the grounds there stated.*

(h) **Waiver or Preservation of Certain Defenses.**

(1) A *defense of lack of jurisdiction over the person,* improper venue, insufficiency of process, *or insufficiency of service of process is waived (A) if omitted from a motion in the circumstances described in subdivision (g),* or (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course.

(2) A defense of failure to state a claim upon which relief can be granted, a defense of failure to join a party indispensable under Rule 19, and an objection of failure to state a legal defense to a claim may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits.

(3) Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.

(Emphases added.)

HRCP Rules 12(b), (g), and (h) are identical to Federal Rules of Civil Procedure (FRCP) Rules 12(b), (g), and (h). "Where we have patterned a rule of procedure after an equivalent rule within the FRCP, interpretations of the rule by the federal courts are deemed to be highly persuasive in the reasoning of this court." *Gold v. Harrison,* 88 Hawai'i 94, 105, 962 P.2d 353, 364 (1998) (internal quotation marks and citation omitted). Under the federal rules, the defense of lack of jurisdiction over the person is waived if not raised in a "pre-answer Rule 12 motion":

[A]ny time defendant makes a pre-answer Rule 12 motion, he [or she] *must include, on penalty of waiver, the defenses set forth in subdivisions (2) through (5) of Rule 12(b).* If one or more of these defenses are omitted from the initial motion but were "then available" to the movant, they are permanently lost. Not only is defendant prevented from making it the subject of a second preliminary motion but he [or she] may not even assert the defense in his [or her] answer.

5A C. Wright & A. Miller, *Federal Practice & Procedure: Civil* § 1391, at 744 (2d ed.1990) [hereinafter "Wright & Miller"] (emphasis added). The defense of a lack of personal jurisdiction based on due process is a personal right and can be waived. *See Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 703, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) (holding that because the requirement of personal jurisdiction represents individual liberty interest, it can be waived like other such

rights); *Hill v. Blind Indus. & Servs. of Maryland,* 179 F.3d 754, 758 (9th Cir.1999) (stating that "[a] lack of personal jurisdiction implicates the Due Process Clause, yet that defense is waived if not promptly asserted" (citing *Insurance Corp. of Ireland,* 456 U.S. at 702–03, 102 S.Ct. 2099)), *amended on other grounds on denial of rehearing by* 201 F.3d 1186 (9th Cir.1999); *Transaero, Inc. v. La Fuerza Aerea Boliviana,* 162 F.3d 724, 729 (2d Cir.1998) (stating that "[t]he requirement that a court have personal jurisdiction is a due process right that may be waived either explicitly or implicitly" (citing *Insurance Corp. of Ireland,* 456 U.S. at 703–05, 102 S.Ct. 2099)); *Committe v. Dennis Reimer Co., L.P.A.,* 150 F.R.D. 495, 498 (D.Vt. 1993) (stating that, " '[u]nlike subject matter jurisdiction, which is a statutory and constitutional prerequisite to a court's ability to entertain a legal action, personal jurisdiction is a personal right arising from the Due Process Clause, and is therefore waivable' " (quoting *Insurance Corp. of Ireland,* 456 U.S. at 702–03, 102 S.Ct. 2099)). *See also Roxas v. Marcos,* 89 Hawai'i 91, 135, 969 P.2d 1209, 1253 (1998) (stating that, "notwithstanding that the defense of lack of personal jurisdiction was asserted in the [defendants'] answer to the [plaintiffs'] complaint, . . . the [defendants'] failure to assert it in their [prior] motion to dismiss constitutes a waiver of the issue pursuant to HRCP Rule 12(g) and (h)"); Wright & Miller, *supra,* § 1351, at 252–53 (stating that " 'personal jurisdiction

may be conferred by consent of the parties, expressly or by failure to object' " (quoting *Zelson v. Thomforde,* 412 F.2d 56, 59 (3d Cir.1969))).[18]

▪ In this case, Defendant filed a HRCP Rule 12(b) pre-answer motion to dismiss based on the defenses of insufficient service and failure to state a claim under HRCP Rule 12(b)(5) and (6), but omitted the defense of lack of personal jurisdiction under HRCP Rule 12(b)(2). By doing so, Defendant waived that defense under Rule 12(h)(1)(A) because exceptions to the waiver provision stated in Rule 12(h)(2) do not include lack of personal jurisdiction. *See* HRCP Rule 12(g).

The fact that Defendant raised the defense of insufficiency of service of process under Rule 12(b)(5) does not preclude waiver of the defense of lack of personal jurisdiction under Rule 12(b)(2). It is true that some federal cases have treated "motions to dismiss for insufficiency of . . . service of process . . . as challenging the court's jurisdiction over the person."[19] Wright & Miller, *supra,* § 1351, at 242–43 (footnote omitted). *See, e.g., Schinker v. Ruud Mfg. Co.,* 386 F.Supp. 626, 628 (N.D.Iowa, 1974) (treating a defendant's motion to dismiss based on the defense of insufficiency of service of process under Rule 12(b)(4) as a defense of lack of personal jurisdiction under Rule 12(b)(2) because the underlying argument for the motion was the amenability of the defendant to personal jur-

**18.** With regard to a party as against whom default was entered for his or her non-appearance, Wright and Miller state that "[a] distinction should be drawn between service of process objections and personal jurisdiction objections" and that "[a]n objection to personal jurisdiction may raise constitutional issues and the non-appearance of the defendant should not constitute a waiver of that defense." Wright & Miller, *supra,* § 1391, at 756 (citing *Williams v. Life Savings and Loan,* 802 F.2d 1200, 1202 (10th Cir.1986) ("Defects in personal jurisdiction . . . are not waived by default when a party fails to appear or to respond." (Citation omitted.))).

**19.** According to Wright and Miller,

The Rule 12(b)(5) procedure should be used only to raise those objections that deal with the manner in which service has been made and not to determine the court's power to adjudicate defendant's rights and liabilities. . . . In spite of its defined scope, the courts often treat a Rule 12(b)(5) motion as if it were a Rule

12(b)(2) motion for lack of personal jurisdiction. This is especially common when the reach of a state long-arm statute or the question whether a corporation is "doing business" within the state is in issue. In a typical case, a nonresident defendant failed to distinguish between the two bases for dismissal and moved under Rule 12(b)(5) to dismiss the case "for lack of jurisdiction over the person of defendant by reason of insufficient service of process." Clearly, a Rule 12(b)(2) motion would have been more appropriate. Although the questions of personal jurisdiction and service of process are closely interrelated, service of process is merely the means by which a court gives notice to defendant and asserts jurisdiction over him; the actual existence of personal jurisdiction should be challenged by a Rule 12(b)(2) motion.

Wright & Miller, *supra,* § 1353, at 277–79 (footnotes omitted).

isdiction under a state long arm statute) (citing C. Wright & A. Miller, *Federal Practice & Procedure: Civil* § 1351 at 561 (1969))). Wright and Miller approve this practice by stating that, "[i]n keeping with the spirit of the federal rules, the precise title of the objection should not prevent the court from considering the motion according to its substance." *Id.*, § 1351, at 243. Thus, according to Wright and Miller, "[t]he occasional judicial failure to distinguish sharply between the two has not caused any difficulty . . . . because the courts have been able to determine the merits of the real issue before them regardless of how the motion is designated." Wright & Miller, *supra*, § 1353, at 280.

■ Accordingly, under some circumstances, the act of raising one defense may preserve another if the two defenses reasonably implicate one another. *See McCurdy v. American Bd. of Plastic Surgery*, 157 F.3d 191, 196 (3d Cir.1998) (observing that, "having objected pursuant to Rule 12(b)(2) on the ground that Hawaiʻi lacked personal jurisdiction over it, [Defendant] effectively preserved the defense that the October 28, 1996 service of process was insufficient on the ground that personal jurisdiction was lacking[,]" and was "not required to make the identical objection twice—once under Rule 12(b)(2) and again under Rule 12(b)(5)").

This, however, is not one of those circumstances. Because Defendant's service argument does not necessarily imply a defect in personal jurisdiction, Defendant's pre-answer motion to dismiss, objecting to service of process, did not preserve the issue of personal jurisdiction. *See Chilicky v. Schweiker*, 796 F.2d 1131, 1136 (9th Cir.1986) (concluding that appellees' first responsive pleading, in which the only ground stated was the lack of service of process, did not preserve their objection to lack of personal jurisdiction, because "Rules 12(b)(4) and (5) were not designed to challenge personal jurisdiction allegedly obtained pursuant to a long-arm statute; rather, they were designed to challenge irregularities in the contents of the summons and irregularities in the manner of delivery of the summons and complaint"); *Federal Home Loan Mortgage Corp. v. Dutch Lane Assocs.*, 775 F.Supp.

133, 136–37 (S.D.N.Y.1991) (determining that defendants' objection to personal jurisdiction did not preserve the defense of insufficient service of process, because " '[i]f the true objection is insufficient service of process, we do not think it is too much to require a litigant to plainly say so' " (quoting *Roque v. United States*, 857 F.2d 20, 22 (1st Cir. 1988))); *Heise v. Olympus Optical Co.*, 111 F.R.D. 1, 4–5 (N.D.Ind.1986) (determining that Japanese manufacturer, which filed a pre-answer motion to dismiss for insufficiency of service of process, waived the defense of personal jurisdiction and, by doing so, "submit[ted] itself to the jurisdiction of [the] court by waiving the defense, even absent an independent basis for jurisdiction over the person"). In Defendant's pre-answer motion to dismiss, Defendant stated that "[s]ervice by certified mail has not been authorized on these Defendants, as required by [HRS] § 634–24." HRS § 634–24 provides for service "outside the State or by registered mail" in cases arising under HRS § 634–23. We note that HRS § 634–23 relates to "an action or proceeding involv[ing] or concern[ing] any property, tangible or intangible, within the jurisdiction of a circuit court[.]"

■ Defendant apparently believed that Plaintiffs claimed jurisdiction under HRS § 634–23 and, accordingly, contested service under the relevant service statute for HRS § 634–23. Inasmuch as HRS § 634–23 does not contain a "minimum contacts" requirement, as due process requires when asserting jurisdiction under Hawaiʻi's long-arm statute, HRS § 634–35, Defendant's argument in his pre-answer motion that service was insufficient under HRS § 634–24 cannot incorporate an objection to personal jurisdiction on the basis of lack of "minimum contacts." *See Shaw*, 76 Hawaiʻi at 329–30, 876 P.2d at 1297–98.

Therefore, because the substance of Defendant's contention involves "the manner in which service has been made and not . . . the court's power to adjudicate [Defendant]'s rights and liabilities," Wright & Miller, *supra*, § 1353 at 277, we cannot treat his motion to dismiss based on the HRCP Rule 12(b)(5) insufficient service of process de-

fense as encompassing the HRCP Rule 12(b)(2) lack of personal jurisdiction defense. Accordingly, Defendant has waived the defense of lack of personal jurisdiction and has consented to personal jurisdiction in the present matter.[20] *See Heise*, 111 F.R.D. at 4 (determining that "a non-resident defendant can submit itself to the jurisdiction of a federal court by waiving the defense, even absent an independent basis for jurisdiction over the person" (citations omitted)).

## X.

■ The record indicates that Defendant did raise the defense of insufficient service of process in his motion to dismiss, dated September 27, 1994, in what appears to be a HRCP Rule 12(b) motion. Defendant contended: (1) that the complaint was served six months after the date of filing; and (2) that service was conducted by certified mail, despite not being authorized by HRS § 634–24. The court denied this motion, without articulating a basis for the ruling.[21] As the court rejected arguments that service was faulty, implicitly the court ruled that service was proper.

Nearly three years later, Defendant raised the contention that service was faulty because the return receipt was not signed by him, but instead signed by Guevremont. He raised this objection in an affidavit attached to his motion to continue settlement conference dated April 15, 1997. Defendant failed to raise this allegation in his original HRCP Rule 12(b) motion. Prior to this date, Plaintiffs could not have been aware of the service defect because the receipt was signed in Defendant's name. Plaintiffs and the court were thus unaware of this claimed service defect.

We believe under these facts that Defendant failed to preserve this objection. *See Zisman v. Sieger*, 106 F.R.D. 194 (N.D.Ill. 1985) (a third-party defendant, who had objected to service for failure to comply with provisions of Illinois law for first attempted service, and later attempted to object to service on another basis for the second attempted service, waived the second basis).

Moreover, Defendant did not raise this issue in his March 17, 1995 motion for reconsideration of the court's order denying his motion to dismiss or in his opening brief on appeal. In the absence of plain error, we will not consider this issue. *See* Hawai'i Rules of Appellate Procedure Rule 28(b)(4)(D) (stating in relevant part that "[p]oints not presented ... will be disregarded, except that the appellate court, at its option, may notice a plain error not presented").

## XI.

■ Finally, Defendant maintains that the court erred in entering a default judgment and in denying his motion to set aside. He asserts that the court could not enter default judgment under RCCH Rule 12.1 because Bogetto represented him at the settlement conference, and RCCH Rule 12.1(a)(2) re-

---

**20.** We note that, because we are reversing the trial court on the issue of default judgment, *see infra*, Defendant is not deemed to have confessed to several allegations pertinent to both the minimum contacts issue and to liability. *See Kam Fui Trust*, 77 Hawai'i at 324, 884 P.2d at 387. Issues such as whether Midland is truly the alter ego of Defendant and, as such, whether the court may disregard corporate identity, are necessarily questions to be answered in determining liability. *See Robert's Hawaii School Bus, Inc. v. Laupahoehoe Transp. Co.*, 91 Hawai'i 224, 240–43, 982 P.2d 853, 869–72 (1999) (noting that only under certain conditions will a court look beyond the corporate identity and hold shareholders or other controlling individuals liable for corporate obligations, and listing factors a court may consider in applying the alter ego doctrine). We do not address the issue of whether Plaintiffs stated a sufficient cause of action against Defendant per-

sonally, inasmuch as Plaintiffs' claims against Midland were dismissed.

**21.** As to the allegation that service by mail was not authorized under HRS § 634–24, we note that HRS § 634–35 allows for service pursuant to HRS § 634–36 if a "tortious act" was committed "within this State." In turn, HRS § 634–36 allows for service by "certified, registered, or express mail, postage prepaid, with return receipt requested" and that plaintiff shall file "an affidavit showing that the copy of summons and complaint" were sent attached with a "return receipt signed by the defendant[.]" Here, Plaintiffs alleged several "tortious act[s,]" including the tort of malicious prosecution. It appears from the record that Plaintiffs ostensibly followed the procedure detailed in HRCP Rule 4(d)(8) and HRS §§ 634–35 & 634–36.

quires only that "each party shall attend the conference *or* be represented by an attorney . . . who has authority to settle." (Emphasis added.)

 However, the court's HRCP Rule 16 order set settlement as one of the items for discussion. At the time of this case, Rule 16 expressly conferred upon the court the discretion to "direct the attorneys . . . to appear before it . . . to consider . . . (6)[s]uch other matters as may aid in the disposition of the action." Settlement is " 'an agreement to terminate, by means of mutual concessions, a claim [that] is disputed in good faith or unliquidated . . . and is designed to prevent or put an end to litigation.' "[22] *In re Doe*, 90 Hawai'i 200, 208, 978 P.2d 166, 174 (App.1999) (quoting *Sylvester v. Animal Emergency Clinic of Oahu*, 72 Haw. 560, 565–66, 825 P.2d 1053, 1056 (1992)). Hence, the settlement of a case is a "disposition of the action,"

22. HRCP Rule 16 provided in relevant part as follows:

**Pre-trial procedure; formulating issues.**

In any action, *the court may in its discretion* direct the attorneys for the parties to appear before it for a conference to consider[:]

. . . .

(6) *Such other matters as may aid in the disposition of the action.*

The court shall make an order which recites the action taken at the conference, the amendments allowed to the pleadings, and the agreements made by the parties as to any of the matters considered, and which limits the issues for trial to those not disposed of by admissions or agreements of counsel; and such order when entered controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice.

(Emphases added.)

23. In pertinent part, the current version of HRCP Rule 16 (2002) states as follows:

(a) **Pretrial Conferences; Objectives.** In any action, the court may in its discretion direct lead counsel or other attorneys for the parties and any unrepresented parties to appear before it for a conference or conferences before trial for such purposes as:

. . . .

(5) facilitating the settlement of the case.

. . . .

(f) **Sanctions.** *If a party or party's attorney fails to obey a scheduling or pretrial order, or if no appearance is made on behalf of a party at a scheduling or pretrial conference,* or if a party or party's attorney is substantially unprepared to participate in the conference, or if a party or party's attorney fails to participate in good

and, certainly, a conference to discuss settlement is in "aid" of that disposition. The present version of HRCP Rule 16 retains the discretion in the court to require such a pretrial conference, but now expressly designates as an objective, "facilitating the settlement of the case."[23] Rule 16(a)(5).

HRCP Rule 16, in its past and present versions, expressly refers to the court's power to direct its orders to a party "or" the party's attorney, *see* HRCP Rule 16 (1997) (stating "the attorneys for the parties"), and to "lead counsel *or* other attorneys for the parties and any *unrepresented* parties," HRCP Rule 16(a) (2002). RCCH Rule 12.1, as it was (and is now) worded, also provides for discretion in the court to order a settlement conference:

**RULE 12.1 Civil Settlement Conference; Settlement Conference Statement;**

faith, the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others *any of the orders provided in Rule 37(b)(2)(B), (C), (D).* In lieu of or in addition to any other sanction, the judge shall require the party or the attorney representing the party or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust.

(Emphases added).

HRCP Rule 37(b)(2)(C) states as follows:

**Failure to Make discovery: Sanctions.**

. . . .

(b) **Failure to Comply With Order.**

. . . .

(2) *Sanctions by Court in Which Action is Pending.* If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35, *the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:*

. . . .

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, *or rendering a judgment by default against the disobedient party*[.]

(Emphasis added.)

**Confidential Settlement Conference Letter.**

(a) Settlement Conference. A settlement conference may be ordered by the court at any time before trial.... A settlement conference in civil cases shall be subject to the following guidelines:

. . . .

(2) *Each party to the action shall attend the conference or be represented by an attorney or other representative who has authority to settle the case;*

. . . .

(6) **Sanctions.** *The failure of a party or his [or her] attorney to appear at a scheduled settlement conference,* the neglect of a party or his [or her] attorney to discuss or attempt to negotiate a settlement prior to the conference, or the failure of a party to have a person authorized to settle the case present at the conference *shall, unless a good cause for such failure or neglect is shown, be deemed an undue interference with orderly procedures. As sanctions, the court may, in its discretion:*

 (i) Dismiss the action on its own motion, or on the motion of any party or *hold a party in default,* as the case may be;

 (ii) Order a party to pay the opposing party's reasonable expenses and attorneys' fees;

 (iii) Order a change in the calendar status of the action;

 (iv) Impose any other sanction as may be appropriate.

. . . .

(Emphases added.) As indicated, under RCCH Rule 12.1, the court is granted authority to impose sanctions for violation of the rule.[24] Among other directives, RCCH Rule 12.1 requires attendance at settlement conferences of "each party ... or other representative." *See* RCCH Rule 12.1(3) (1997); RCCH Rule 12.1(1)(2) (2002).

On their faces, these rules indicate, by the use of the disjunctive term "or," that the presence of either a party or a designated representative, such as an attorney, may be compelled by the court. The authority to order both the party and the party's representative or attorney to be present at a settlement conference is neither expressly set forth in HRCP Rule 16 nor in RCCH Rule 12.1; however, we believe that such a requirement falls well within the inherent power of the court to "prevent undue delays and to achieve the orderly disposition of cases." *Compass Dev., Inc. v. Blevins,* 10 Haw.App. 388, 402, 876 P.2d 1335, 1341 (1994) (internal quotation marks and citations omitted).

Obtaining the presence of the parties and their attorneys facilitates face-to-face communication among the court, the parties, and the attorneys, that is so often crucial to successful settlements. Such a procedure avoids delay and miscommunication that may otherwise adversely affect negotiations. Certainly, the resolution of cases by settlement or of issues in the cases, even in the absence of settlement, contributes substantially to the prompt and efficient disposition of cases. *Cf. Bank of Hawai'i v. Kunimoto,* 91 Hawai'i 372, 387, 984 P.2d 1198, 1213 (1999) (stating that "Hawai'i circuit courts have the inherent power and authority to control the litigation process before them and to curb abuses and promote fair process[,] ... including[, for example,] the power to impose sanctions" (internal quotation marks and citation omitted)); *State v. Mageo,* 78 Hawai'i 33, 37, 889 P.2d 1092, 1096 (App. 1995) (stating that "the inherent power [of the court] include[s] the power to administer justice" (internal quotation marks and citation omitted)); *Kukui Nuts of Hawaii, Inc. v. R. Baird & Co., Inc.,* 6 Haw.App. 431, 436, 726 P.2d 268, 271 (1986) (stating that "the trial court possesses inherent power to do ... things necessary for the proper administration of justice" (citations omitted)), *cert.*

---

**24.** The current subsection (a) of RCCH Rule 12.1, which states in relevant part that "[a] settlement conference may be ordered by the court at any time before trial," is the same as the version pertinent to this case. The former subsection (b) was amended. It now states that "[i]n all civil cases, including those which have been designated as Complex Litigation, a settlement conference statement shall be filed not less than 5 working days prior to the date of the settlement conference." A new subsection (c) was added, requiring the parties to submit a confidential settlement conference letter.

*denied,* 71 Haw. 668, 833 P.2d 900 (1990); HRS § 603–21.9(5) (1993) (stating that "[t]he several circuit courts shall have power[ ] . . . [t]o . . . do such other acts and take such other steps as may be necessary to carry into full effect the powers which are or shall be given to them by law or for the promotion of justice in matters pending before them).

## XII.

### A.

■■■■■ The court's entry of default judgment was apparently imposed under RCCH 12.1(a)(6), which permits entry of default as a sanction for violation of the Rule. "[T]his court . . . reviews an award of [RCCH] Rule 12.1 sanctions under the abuse of discretion standard." *Canalez v. Bob's Appliance Serv. Center, Inc.,* 89 Hawai'i 292, 300, 972 P.2d 295, 303 (1999). "A . . . court abuses its discretion whenever it exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party." *Shanghai Inv. Co., Inc. v. Alteka Co., Ltd.,* 92 Hawai'i 482, 491–92, 993 P.2d 516, 525–26 (2000) (internal quotation marks and citations omitted).

Because, as we have decided, it is within the power of the court to require both a party and the party's attorney to be present at a settlement conference, the court could properly impose such a requirement if, in the court's considered judgment, dual attendance would facilitate settlement of the case. We noted, additionally, that Defendant's counsel, Bogetto, was also a defendant in this case, raising the potential problem of conflicting interests. We are less sanguine, however, about the court's insistence that Defendant appear in person, rather than by telephone, in light of the great distance he would need to travel and the hardships recounted in Defendant's affidavit. But arguably, Defen-

dant's failure to appear personally and his adamant belief that his presence was not necessary could have established grounds to enter default.

### B.

On the other hand, Defendant's failure to appear at the OSC hearing may have been an inadvertent omission on his part. Defendant was personally served with the April 24, 1997 OSC. However, Bogetto's affidavit attached to Defendant's July 7, 1997 motion to set aside, Heller's August 5, 1997 affidavit, and Defendant's and Bogetto's testimony at the August 8, 1997 hearing demonstrate confusion as to the date of the OSC hearing. Bogetto stated that he told Defendant (1) that the court would hear the OSC after deciding Defendant's motion for summary judgment, which was originally scheduled for May 28, 1997, and (2) that the hearing on the motion for summary judgment was moved to June 6, 1997. Such circumstances would explain Defendant's failure to appear at the OSC hearing on May 28, 1997.

Additionally, in his affidavit to continue the summary judgment hearing, Bogetto indicated that he would be out of state from May 11 to May 28, 1997, the day set for the OSC. The court granted the continuance motion with knowledge that Bogetto would be away on May 28. Yet, it was unlikely that Defendant could proceed without Bogetto at the May 28 OSC hearing.

## XIII.

### A.

In this case, Defendant moved to set aside the default judgment under HRCP Rule 55(c).[25] Since the court's entry of default judgment was not made pursuant to HRCP Rule 55(a), HRCP Rule 55(c) was not the appropriate basis for requesting such action.

---

**25.** HRCP Rule 55 provides in pertinent part as follows:

 **Default.**

 (a) **Entry.** *When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules* and that fact is made to appear by affidavit or otherwise, the clerk shall enter his [or her] default.

 . . . .

 (c) **Setting Aside Default.** *For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).*

(Emphases added.)

*See e.g., First Hawaiian Bank v. Powers,* 93 Hawai'i 174, 185, 998 P.2d 55, 66 (App.2000) (stating that "once a party has pleaded, or has otherwise defended, . . . that party's subsequent conduct, such [as] a failure to appear at trial or a failure to comply with discovery requests, [may not] be considered a subsequent failure to 'otherwise defend' so as to justify the entry of a default under Rule 55(a)" of the District Court Rules of Civil Procedure) (quoting 10 *Moore's Federal Practice* § 55.10[2][b] at 55–12.1–12.2 (3d ed.1998))). Defendant could have moved under HRCP Rule 60(b)[26] to set aside the default but did not do so. Nevertheless, we regard the court's denial of the motion to set aside as error.

### B.

■ Because the denial of the motion to set aside the default judgment stems from the exercise of its discretion in imposing sanctions under RCCH Rule 12.1, we regard such a denial as subject to the same review standard of abuse of discretion. In our view, the sanction of a default judgment is a harsh one. *Cf. W.H. Shipman, Ltd. v. Hawaiian Holiday Macadamia Nut Co., Inc.,* 8 Haw.App. 354, 361, 802 P.2d 1203, 1207 (1990) (noting that "[d]ismissal and default judgment are authorized only in extreme circumstances" under HRCP Rule 37 (internal quotation marks and citations omitted)). We affirm that " 'defaults and default judgments are not favored and that any doubt should be resolved in favor of the party seeking relief, so that, in the interests of justice, there can be a full trial on the merits.' "

*Lambert v. Lua,* 92 Hawai'i 228, 235, 990 P.2d 126, 133 (App.1999) (quoting *BDM v. Sageco, Inc.,* 57 Haw. 73, 76, 549 P.2d 1147, 1150 (1976) (citing *Tolson v. Hodge,* 411 F.2d 123 (4th Cir.1969); *Butner v. Neustadter,* 324 F.2d 783 (9th Cir.1963); *Boyer v. State of Wisconsin,* 55 F.R.D. 90 (E.D.Wis.1972); *S.E.C. v. Vogel,* 49 F.R.D. 297 (S.D.N.Y. 1969)). *See Oahu Plumbing & Sheet Metal, Inc. v. Kona Constr., Inc.,* 60 Haw. 372, 380, 590 P.2d 570, 576 (1979) (noting "the preference for giving parties an opportunity to litigate claims or defenses on the merits" (citing *Ramada Inns, Inc. v. Lane & Bird Advertising, Inc.,* 102 Ariz. 127, 426 P.2d 395 (1967))).

■ We must conclude the court abused its discretion in denying the motion to set aside. On September 12, 1997 and October 17, 1997, at the hearings scheduled for the court's decision on that motion, the court in fact held settlement conferences. The court ordered the settlement negotiations, which previously had not taken place, to proceed while holding Defendant's motion to set aside in abeyance. Defendant apparently did make settlement proposals and did engage in such conferences at the behest of the court. *See Shasteen, Inc. v. Hilton Hawaiian Village Joint Venture,* 79 Hawai'i 103, 109, 899 P.2d 386, 392 (1995) (holding that under the circumstances, the trial court abused its discretion in dismissing the case with prejudice as a RCCH Rule 12.1 sanction for the plaintiff's failure to file a settlement conference statement, attend the settlement conference, appear with counsel, and otherwise prosecute

---

**26.** Rule 60(b) provides in pertinent part as follows:

**Relief from Judgment or Order.**

. . . .

(b) **Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc.** On motion and upon such terms as are just, the court may relieve a party or his [or her] legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) *the judgment is void;* (5) the

judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) *any other reason justifying relief from the operation of the judgment.* The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court. . . .

its case); *Compass Dev.*, 10 Haw.App. at 401, 876 P.2d at 1341 (holding that while "the failure of a plaintiff to institute selection of a trial date under RCCH Rule 12(c) is a breach of its duty to proceed diligently[,]" "delay caused by a plaintiff's failure to file a document designating alternative trial dates or requesting a 'trial setting conference' did not warrant a severe sanction of dismissal").

▮ Of course, the court had the discretion, subject to review, to levy lesser sanctions for Defendant's original failure to attend settlement conferences in person and may, on remand, exercise such a prerogative. In our view, such a "[l]esser sanction[ ] against the [defendant] would better serve the interest of justice." *Id.* at 402, 876 P.2d at 1342 (internal quotation marks and citations omitted). *See also Canalez*, 89 Hawai'i at 304, 972 P.2d at 307 (affirming the trial court's RCCH Rule 12.1 sanction ordering the plaintiff and his counsel to pay attorneys' fees where the plaintiff and his counsel failed to thoroughly evaluate plaintiff's claim or to attempt to negotiate a settlement "through an exchange of written bona fide and reasonable offers of settlement prior to the conference," as required by RCCH Rule 12.1(a)(4)); *Gump v. Wal–Mart Stores, Inc.*, 93 Hawai'i 428, 453, 5 P.3d 418, 443 (App.1999) (holding that the trial court did not abuse its discretion in imposing a monetary sanction against a defendant whose counsel advised the court during a pretrial conference that he had "zero settlement authority," in violation of a RCCH Rule 12.1 pretrial order which required that a representative with settlement authority be present at a settlement conference), *reversed in part on other grounds by*, 93 Hawai'i 417, 5 P.3d 407 (2000); *Cook v. Surety Life Ins., Co.*, 79 Hawai'i 403, 410 n. 6, 903 P.2d 708, 715 n. 6 (App.1995) (noting that "for purposes of civil settlement confer-

ences under [RCCH] Rule 12.1, an attorney representing a party is required to have authority to settle the case or risk sanctions"). Under the foregoing circumstances, the denial of Defendant's motion to set aside the default judgment "exceed[ed] the bounds of reason." [27] *Shanghai Inv. Co.*, 92 Hawai'i at 491, 993 P.2d at 525 (internal citations and quotation marks omitted).

We note, collaterally, that the court did not sanction Plaintiffs for the untimely filing of their settlement conference statement, or Steffens for failing to attend settlement conferences on September 12 and October 17, 1997. We consider, also, that defaulting Defendant for failing to appear (although his counsel did) for a settlement conference on April 20, 1997 would not seem warranted when Plaintiffs apparently did not file their settlement conference statement until June 10, 1997, well after the April 20, 1997 conference date. We are constrained to hold that the court abused its discretion in denying Defendant's motion to set aside default judgment.

## XIV.

Accordingly, we vacate the July 17, 1998 amended judgment in favor of Plaintiffs, instruct that the court grant Defendant's motion to set aside default judgment, and remand the case for further proceedings consistent with this opinion. Our disposition makes it unnecessary to consider the remaining contentions raised by Defendant.

---

**27.** The procedure followed by the court may have left the impression that granting Defendant's motion to set aside default was conditioned on Defendant reaching a settlement of the case with Plaintiffs. Such a condition is obviously an impermissible basis for conducting settlement negotiations. *See Associates Fin. Servs. Co. of Hawai'i, Inc. v. Mijo*, 87 Hawai'i 19, 28, 950

P.2d 1219, 1228 (1998) (stating that "throughout [the settlement] process, the judge must guard against indirectly coercing a settlement by 'nudging' or 'shoving' the parties toward settlement" and that "the perceptions of all the players—judges, counsel, and litigants—are the key" (internal quotation marks and citations omitted)).